IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al. | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) Civil Action No. IP99-1693 C-M/S |
| CINERGY CORP., CINERGY SERVICES, INC. PSI ENERGY, INC., and THE CINCINNATI GAS & ELECTRIC COMPANY | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFF-INTERVENORS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER

Plaintiff-Intervenors New Jersey, New York, and Connecticut ("Intervenor-States" or "States") hereby submit this Memorandum in support of their motion, pursuant to Fed. R. Civ. P. 26(c) and 26(b)(2), for a protective order. As set forth below, a limited protective order should be entered because (1) many categories of documents sought by Defendants (referred to herein as "Cinergy") in their First Set of Interrogatories and Requests for Admission and Second Request for Production of Documents (collectively "Requests") are simply not relevant in any way to the claims or defenses in this action, nor reasonably calculated to lead to admissible evidence; and (2) the enormous burden of responding to these Requests outweighs any usefulness or benefit such documents could possibly provide to Cinergy in its defense of the case.

In addition, because the Requests seek documents from every person, agency, or entity in any way related to each of the States --rather than simply the agencies or bureaus charged with the duty of implementing the Clean Air Act--they are grossly overbroad. The States therefore respectfully request that this Court grant their motion for a protective order and hold that the following categories of documents need not be produced:

- Documents concerning electricity generating units ("EGUs") within the Intervenor-States that have already been produced to Defendants' counsel;
- Documents from any agencies or bureaus within the States other than those responsible for the implementation of the PSD provisions of the Clean Air Act ("CAA"); and
- Documents relating to the NSPS program, which program is not placed at issue by the States' 2nd Amended Complaint.

### I. CINERGY'S REQUESTS AND THE STATES' RESPONSES

On or about July 28, 2003, Cinergy served their discovery Requests upon the States.[1] Several of the Requests seek an enormous amount of information pertaining to <u>all</u> EGUs <u>within the Intervenor-States</u>.[2] As will be detailed more fully below, these Requests are irrelevant to the issues at hand; it is the federal government--and not the Intervenor-States--that regulates the Defendants' plants. Moreover, even though the Plaintiffs have asserted claims only against Cinergy's coal-fired units, Cinergy's Requests cover all EGUs, not just coal-fired ones.[3] Similarly, despite the fact that the smallest Cinergy unit against which the Plaintiffs have asserted a claim is rated at 100 MW, the Defendants' Requests would require the States to produce documents on <u>all</u> EGUs within their borders, even those less than 1 MW in size. See Thomson letter of 31 March 2004 at p. 2, attached as Exhibit A, Griffin Decl., at Tab 8. (noting that "the Cinergy Requests explicitly called for the production of information regarding fossil fuel-fired electric generating units **of any size** located

---

[1] <u>See</u> Defendants' First Requests for Admission, First Set of Interrogatories and Request for Production of Documents to Plaintiff and Plaintiff Intervenors, attached as Tab 1 to Exhibit A, the Declaration of Maurice A. Griffin (hereinafter "Griffin Decl.").

[2] <u>See, e.g.</u>, Exhibit A, Griffin Decl., at Tab 1, Interrogatory Request No. 11 (requesting a full description of <u>every</u> inspection undertaken by the States since 1980 at any EGU to evaluate compliance with any portion of the Clean Air Act or any applicable State Implementation Plan).

[3] <u>See</u> Exhibit A, Griffin Decl., at Tab 1, Definition No. 9 (defining Electricity Generating Units to mean any unit used to generate electricity regardless of the type of fuel used, the type of equipment employed by the facility in question, the public or private status of the unit, or its classification as a utility or non utility power producer).

within the States") (emphasis in original). Finally, Cinergy has defined each Plaintiff-Intervenor State so broadly that every person and office affiliated in any way with each State would have to be searched for documents.[4]

As reflected in correspondence between the Parties, despite continued assertions that the sought documents are irrelevant to the matter at issue, the States have offered to produce (to the extent not already produced) non-privileged documents 1) from the bureaus within their respective environmental regulatory agencies that are charged with implementing the PSD provisions of the CAA[5] and 2) concerning all EGUs above 100 MW. See Exhibit A, Griffin Decl., at ¶ 3. Cinergy has rejected this offer, and despite an attempt to resolve their differences at an August 5, 2004 meet and confer teleconference, the Parties are at an impasse. See Exhibit A, Griffin Decl., at ¶ 5. The States therefore seek a protective order from this Court limiting discovery as set forth herein.

## II.    LEGAL STANDARD

Under Rule 26(c) of the Federal Rules of Civil Procedure, the Court "may make any order which justice requires to protect a party" from "oppression[] or undue burden or expense." The Court may limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). The party moving for a protective order bears the burden of showing good cause, which may be satisfied with "a particular and specific demonstration of fact." Patt v. Family Health Systems, Inc., 189 F.R.D. 518, 522 (E.D. Wis. 1999). As demonstrated below, Plaintiff-Intervenors are entitled to a protective order limiting the scope of discovery related to EGUs because this discovery is irrelevant and responding to it would be unduly burdensome and expensive.

---

[4]See, e.g., Exhibit A, Griffin Decl., at Tab 1, Definition No. 37 (defining the State of New York as "its departments, offices, agencies and instrumentalities, including without limitation the New York Attorney General, and present and former officers, directors, executives, agents, servants, representatives, attorneys, consultants, advisors, contractors, and employees of the State of New York"). The definitions for New Jersey and Connecticut are similarly broad.

[5]Cf. Order of Judge Kemp in the AEP case at p. 15 ("[T]he Court agrees that divisions of state environmental agencies responsible for matters other than air pollution should not be required to search their records"), attached to Exhibit A, Griffin Decl., at Tab 13.

## III. THE DOCUMENTS SOUGHT BY DEFENDANTS DO NOT MEET THE STANDARDS FOR DISCOVERY SET FORTH IN THE FEDERAL RULES OF CIVIL PROCEDURE

Information sought in discovery must be reasonably calculated to lead to the discovery of admissible evidence to be deemed relevant. Fed. R. Civ. P. 26(b)(1). In 2000, Rule 26(b)(1) was amended to "regulate the breadth of sweeping or contentious discovery" by narrowing the relevance standard.[6] See Fed. R. Civ. P. 26(b)(1) Comm. Notes. Whereas previously, parties could engage in discovery as of right so long as it was related to the "subject matter" of litigation, party discovery is now restricted to the "actual claims and defenses involved in the action." Id. The "actual scope of discovery should be determined according to the reasonable needs of the action." Id. (emphasis added).

### A.    The States' Past Regulatory Interpretations and Actions Are Irrelevant to This Case as a Matter of Law

The Plaintiff-Intervenor States' actions involving the in-state facilities which they regulate are irrelevant to an action involving Midwestern utilities' violations of federal law. The amended Complaints in this action allege, inter alia, that Cinergy undertook "major modifications" at its coal-fired EGUs without first undergoing pre-construction review and/or obtaining pre-construction permits as required under federal law and the law of the states in which the Cinergy plants are located. Plaintiff-Intervenors' substantive claims are based upon the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act, 42 U.S.C. §§ 7470-7479; the nonattainment New Source Review ("NNSR") provisions of the Clean Air Act, 42 U.S.C. §§ 7502-7503; federal regulations relating to these programs; and the statutes and regulations of the states of Ohio and Indiana, the states in which the plants at issue are located.

The only law relevant to the meaning of "major modification" under the CAA is federal law. The only facts relevant to the determination of these issues are those concerning Cinergy's capital projects, EPA's prior official statements and actions, and--to the extent Cinergy

---

[6]The United States Supreme Court has ordered that the 2000 Amendments to the Rules "shall govern all civil actions pending at the time of the effective date 'insofar as [is] just and practicable. U.S. Supreme Ct. Order of 17 April 2000.

4

relied reasonably upon them-- the statements and actions of Ohio and Indiana, the states which regulate Cinergy.

As reflected in the States' 2nd Amended Intervenor Complaint, the States' claims are asserted pursuant to the "citizen suit" provisions of the Clean Air Act, 42 U.S.C. § 7604(a); there are no claims based upon the statutes or regulations of the Plaintiff-Intervenor States. Indeed, because none of the plants at issue in this case is located in any of the Intervenor States, such plants are not subject to regulation by such States. Any information on purely in-state inspections in New York, New Jersey, or Connecticut is irrelevant to Cinergy's alleged violations.

### B.   Prior Discovery Requests in the Ohio Edison Case Indicate the Practical Irrelevance of the Information Sought by Cinergy

The practical irrelevance of the information Cinergy seeks is amply demonstrated by the Ohio Edison case. In both Ohio Edison and the litigation in this matter, the Plaintiffs alleged that the Defendants undertook physical modifications at their coal-fired power plants without applying for the necessary PSD permits or installing the required controls. See Exhibit B, Declaration of Jean Reilly (hereinafter "Reilly Decl."), at ¶ 3, attached hereto. Counsel for Ohio Edison, AEP, and Cinergy[7] all served discovery on the Plaintiff-Intervenor States seeking documents and information concerning physical changes undertaken at EGUs in the Intervenor-States. See Exhibit B, Reilly Decl., at ¶ 4. Judge Kemp, realizing that ordering the "broad discovery" the Defendants sought against the States "would be the death knell to any hope [of] resolving th[e] case in a timely fashion," limited discovery to EGUs "similar in size" to those operated by the Defendants. See Kemp Order of 19 June 2001 at pp.14-15, Exhibit A, Griffin Decl., at Tab 13.

In keeping with this order, the State of New Jersey produced over 150,000 pages of documents in AEP and Ohio Edison concerning fossil fuel fired EGUs over 120 MW for which a PSD applicability determination had been made. See Exhibit B, Reilly Decl., at ¶ 4. Likewise, in

---

[7]Ohio Edison and AEP are represented by the same counsel as are representing Cinergy in this case.

compliance with the order, the State of New York searched for, and produced to opposing counsel[8], documents from seven regional offices (and at least one regional sub-office), the central office headquarters of the New York State Department of Environmental Conservation ("NYSDEC"), as well as the NYSDEC's off-site storage areas. See Exhibit D, the Declaration of Jared Snyder (hereinafter "Snyder Decl."), at ¶ 4. This massive production entailed over 100 boxes of documents. See Snyder Decl. at ¶ 4. Similarly, the State of Connecticut produced over 900,000 pages worth of documents in AEP and Ohio Edison including files from all EGUs of 120 MW or greater. See Exhibit E, the Declaration of Kimberly P. Massicotte (hereinafter "Massicotte Decl.",) at ¶ 4. Like the productions for New Jersey and New York, this process took several months to complete. See Exhibit E, Massicotte Decl., at ¶ 4.

Even with the limitations imposed by Judge Kemp, production of the documents was extremely time-consuming and burdensome. For example, New Jersey's document production efforts entailed reviewing the files of 72 facilities over a period of approximately *nine* months. See Exhibit B, Reilly Decl., at ¶ 4. Despite this massive undertaking, however, Ohio Edison made no use of these documents at trial. See Exhibit B, Reilly Decl., at ¶ 6. In fact, not a single sheet of paper that New Jersey produced during discovery was offered into evidence. See Exhibit B, Reilly Decl., at ¶ 6.

The Defendants' lead trial attorney in the Ohio Edison case is James King of the law firm of Porter Wright Arthur and Morris LLP ("Porter Wright"). See Exhibit B, Reilly Decl., at ¶ 7. As this Court is aware, Mr. King and Porter Wright are also part of Cinergy's trial team and are again seeking documents similar to those produced in Ohio Edison except that this time their discovery Requests would require the Intervenor-States to search for documents concerning physical modifications at *any* EGU--no matter how small--in the Intervenor-States. See Exhibit B, Reilly Decl., at ¶ 7.

Cinergy's counsel has acknowledged that it already has all of the documents concerning EGUs above 120 MW in the Intervenor-States that were produced in Ohio Edison. See Exhibit A, Griffin Decl., at ¶ 4. It should be noted, moreover, that when New Jersey and New York produced

---

[8] As noted previously, opposing counsel was the same as opposing counsel in this case. Consequently, opposing counsel is already in possession of these documents.

documents for a facility above 120MW, those States produced documents concerning all of that facility's units, even those below 120MW. See Exhibit B, Reilly Decl., at ¶ 5; Exhibit D, Snyder Decl., at ¶ 4. For example, with regard to PSE&G Kearny, New Jersey produced documents for units that were 146MW and 167MW as well as for a unit that was 18MW and four units that were 60MW. See Exhibit C, the Declaration of Sunila Agrawal (hereinafter "Agrawal Decl."), at ¶ 6; Exhibit B, Reilly Decl., at ¶ 5. Thus, Cinergy already has a representative sample of the documents it is seeking. Additionally, since all the Cinergy units at issue in this case are coal-fired units and the smallest of these is 100 MW, the Intervenor-States have offered to produce like documents for EGUs from 100-120 MW. The Cinergy trial team has refused this offer. See Exhibit A, Griffin Decl., at ¶ 3.

The burden is on Defendants to prove that documents below these limits have any relevance at all, given that even documents from similarly sized units proved to be completely irrelevant in the Ohio Edison trial, and there is no reason to expect that smaller units would be any different. Further, the burden is on the Defendants to prove that documents concerning universities and pharmaceutical companies and incinerators--all of which are considered EGUs because they sell electricity to the grid and are part of the more than 160 facilities within New Jersey and New York covered by the discovery requests--have any bearing on this case. See Exhibit C, Agrawal Decl., at ¶ 4; Exhibit D, Snyder Decl., at ¶ 5. Finally, the burden is the Defendants to prove that physical changes undertaken at oil or gas-fired EGUs have any relevance to a case involving solely coal-fired EGUs. To the contrary, common sense would seem to indicate that discussion of physical changes to equipment such as combustion turbines at oil or gas-fired units would force the Court to engage in mini-trials to determine if replacing these components--which do not exist at coal-fired plants--would meet the test of a major modification under the WEPCo factors: nature and extent of change, purpose of change, cost of change, frequency of the change at the unit in question.

### C. The Burden of Production of the Documents Sought by Defendants is Far Outweighed by any Production Value to Defendants

As discussed above, the Defendants' discovery Requests seek information about every EGU in the Intervenor States, no matter what the size and no matter how dissimilar to coal-fired facilities.

See Interrogatory Request No. 11 and Interrogatory Request Definition No. 9 attached hereto at Exhibit A, Griffin Decl., at Tab 1. This production would be particularly burdensome.

For example, there are approximately 66 fossil-fuel fired facilities comprising 210 units in New Jersey that would be responsive to Cinergy's demands. See Exhibit C, Agrawal Decl., at ¶ 4. Based upon the length of time it took to review the NJDEP Air Department files for 72 facilities in the liability phase of the Ohio Edison trial, see Exhibit B, Reilly Decl., at ¶ 4, New Jersey is looking at up to another nine months of an intensive (and expensive) review of files and drafting of a privilege log for facilities between zero and 120 MW if Cinergy's Requests are not modified.

In New York there are at least 80 facilities comprising 210 units that would be subject to Defendants' Requests. See Exhibit D, Snyder Decl., at ¶ 5. New York would also anticipate a substantial amount of time devoted to production of documents related to this request. See Exhibit D, Snyder Decl., at ¶ 6.

In Connecticut there are at least another 19 facilities comprising 46 units that would be subject to Defendants' request. See Exhibit E, Massicotte Decl., at ¶ 6. The production would comprise several lawyers and numerous DEP employees and take several months to complete. See Massicotte Decl. at ¶ 6.

Given the time and effort expended in producing documents in the Ohio Edison and AEP cases, it is likely that such a production in this case would result in the same problems Magistrate Judge Kemp sought to avoid by his Order of June 19, 2001. See Magistrate Kemp's Order and Opinion, Exhibit A, Griffin Decl., at Tab 13.

Finally, aside from the sheer volume, many of these documents that Cinergy is seeking are subject to claims of confidentiality and could entangle in the lawsuit numerous additional companies

that oppose any release of their submissions.

Given the immensity and complexity of this document production task balanced against the limited relevance--if any--of these documents concerning EGUs under 120MW, the States respectfully ask the Court to protect them from this discovery burden.

### D. The Defendants' Discovery Requests Concerning NSPS Facilities Are Equally Irrelevant and Burdensome.

The Defendants' requests concerning the files of NSPS facilities above 30MW in the Intervenor-States are equally irrelevant and burdensome. See Interrogatory Request No. 27 and 31 in Exhibit A, Griffin Decl., at Tab 1. First, as the Defendants themselves acknowledge, the States' have not asserted any NSPS claims. See, Boxerman July 1, 2004 letter, Exhibit A, Griffin Decl., at Tab 12. Second, to the extent that facilities above 120MW for which documents were produced in Ohio Edison were NSPS facilities, NSPS documents have already been made available to Cinergy's counsel. See Exhibit B, Reilly Decl., at ¶ 5.

In addition, for NSPS documents related to New Jersey, the NJDEP's on-line data system reveals that there are at least 347 facilities subject to NSPS in New Jersey. See Exhibit C, Agrawal Decl., at ¶ 7. It is important to note that only facilities that received permits after 1998 are required to be registered on-line. See Exhibit C, Agrawal Decl., at ¶ 7. Therefore, the total universe of NSPS facilities in New Jersey is likely to be much larger. See Exhibit C, Agrawal Decl., at ¶ 7. The burdensomeness of the production efforts would, therefore, be the same or larger than that articulated above concerning PSD.

## IV. CONCLUSION

Given the irrelevance of Cinergy's Requests–both legally and in practical application--and the burdensomeness of complying with them, the States respectfully ask the Court to preclude the Defendants from seeking production of documents beyond those that have previously been produced by the States concerning PSD and NSPS affected facilities within their borders. Alternatively, the States ask the Court to narrow the discovery such that the States only have to produce non-privileged documents 1) from the bureaus within their respective Departments of Environmental Protection that are charged with implementing the PSD provisions of the CAA and 2) concerning all EGUs above 100 MW.

Respectfully Submitted,

PETER C. HARVEY
ATTORNEY GENERAL
OF NEW JERSEY STATE OF NEW JERSEY

BY: *Maurice A. Griffin*
JEAN P. REILLY
MAURICE GRIFFIN
CHRISTOPHER D. BALL
Deputy Attorneys General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, New Jersey 08625-0093

ELIOT SPITZER
ATTORNEY GENERAL
OF THE STATE OF NEW YORK

BY: ___*Jared Snyder* /mtg___
J. JARED SNYDER
EUGENE KELLY
Assistant Attorneys General
The Capitol
Albany, NY 12224
(518) 402-2260


RICHARD BLUMENTHAL
ATTORNEY GENERAL
OF THE STATE OF CONNECTICUT

BY: ___*Kimberly P. Massicotte* /mag___
KIMBERLY P. MASSICOTTE
CARMEL MOTHERWAY
Assistant Attorneys General
55 Elm Street, P.O. Box 120
Hartford, Connecticut 06141-0120
(860) 808-5250