IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| STATE OF NEW YORK, STATE OF NEW | ) |
| JERSEY, STATE OF CONNECTICUT, | ) |
| HOOSIER ENVIRONMENTAL COUNCIL, | ) |
| and OHIO ENVIRONMENTAL COUNCIL, | ) |
| | ) Civil Action No. IP99-1693 C-M/S |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| CINERGY CORP., CINERGY SERVICES, | ) |
| INC., PSI ENERGY, INC., and THE | ) |
| CINCINNATI GAS & ELECTRIC | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF CINERGY'S MOTION TO AMEND
THE ORDER OF AUGUST 29, 2005 AND SEPTEMBER 8, 2005
AND TO CERTIFY AN INTERLOCUTORY APPEAL**

Defendants Cinergy Corp., Cinergy Services, Inc., PSI Energy, Inc., and Cincinnati Gas & Electric Co. ("Cinergy"), pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3), respectfully request that the Court amend its Order of August 29, 2005 on Cross-Motions for Partial Summary Judgment Regarding the Applicable Test for Emissions Increases, as corrected by the Court's Order of September 8, 2005 (collectively, the "Order"), to permit an interlocutory appeal and to certify the question resolved in the Order for immediate appeal.

Cinergy seeks leave to file an immediate, interlocutory appeal because the issue resolved in the Order is a controlling, contestable question of law, and its final resolution will advance the

ultimate termination of this litigation. Accordingly, Cinergy requests the certification of the following issue for interlocutory appeal:

> Whether the definition of "modification" in the Clean Air Act and its implementing regulations and the Seventh Circuit's decision and remand order in *Wisconsin Electric Power Co. v. Reilly*, 893 F.2d 901 (7th Cir. 1990), require hours and conditions of operation to be held constant when determining whether a project will cause a net emissions increase, as the courts have held in *United States v. Duke Energy Corp.*, 411 F.3d 539 (4th Cir. 2005), *United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619 (M.D.N.C. 2003), and *United States v. Alabama Power Co.*, 372 F. Supp. 2d 1283 (N.D. Ala. 2005).

This case is scheduled for a jury trial on February 6, 2006, and all parties and the Court have acknowledged that the issue resolved in the Order is of central importance to the parties' presentations at trial. If the Court grants this motion, Cinergy will seek expedited review and propose a briefing schedule to the Seventh Circuit that allows a prompt decision on appeal while maintaining this Court's schedule for trial.

## **ARGUMENT**

A district court shall certify a question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) if the court is of the opinion that "(1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the order sought to be appealed." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007 (7th Cir. 2002). The Seventh Circuit has "emphasize[d] the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz v. Board of Trustees of the Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000). Because the question presented satisfies each of these elements, the Court should certify it for interlocutory appeal.

### A. The Question Is a "Pure" Question of Law.

A question is a "question of law" if it is "a question regarding the meaning of a statutory or constitutional provision, regulation or common law doctrine." *Boim*, 291 F.3d at 1007. The question of the proper emissions increase test under the Clean Air Act ("CAA") and New Source Review ("NSR") rules clearly satisfies this criterion. The Court observed in the Order itself that "the appropriate method of determining whether a physical change at a source has caused an increase in emissions for purposes of NSR" presents a "purely legal question." Order at 1. This question requires the Court of Appeals to interpret a statute (the CAA) and EPA's regulations. *See* 42 U.S.C. §§ 7479, 7501; 42 C.F.R. part 52 (1980). Thus, the issue presented is a "pure question of law," which is "suitable for determination for an appellate court without a trial record." *Ahrenholz*, 219 F.3d at 677. [1]

### B. This Question of Law Is Controlling.

"A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation . . . ." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assoc.*, 86 F.3d 656, 659 (7th Cir. 1996). "Controlling" does not mean "dispositive." Instead, "'controlling' means serious to the conduct of the litigation, either practically or legally.'" *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). "[T]he standard should be kept flexible." *Id*.

The question of which "emissions increase" test the CAA and NSR rules require is a controlling question of law — indeed, it is fundamental to the resolution of this case. As

---

[1] Plaintiffs and Plaintiff-Intervenors agree. *See* U.S. Mem. Supp. Mot. S.J. on Emissions Test ("U.S. Mem."), at 1 ("The United States here seek legal rulings . . . ."); Plaintiff-Intervenors' Mem. Supp. Mot. S.J. on Emissions Test ("P.I. Mem.") at 5 (seeking a ruling on "the applicable legal test for determining whether a physical or operational change increases emissions") (emphases added).

plaintiffs stated in initiating the summary judgment briefing on this question, a "central area of dispute in this case is whether each of [Cinergy's] changes to the plants resulted in a 'significant net emissions increase.'" U.S. Mem. at 1.  If a change does not cause a "significant net emissions increase," the change is not a "modification."  And, as this Court observed, "whether the changes Cinergy made to its emitting sources were modifications" is "[c]entral to this lawsuit."  Order at 2.  Simply put, if a challenged project does not cause an "emissions increase," EPA cannot prevail.  Thus, the legal question of the proper method of calculating "emissions increases" is of utmost "serious[ness] to the conduct of the litigation." *Johnson*, 930 F.2d at 1206.

A final determination of the proper emissions increase test is also of critical practical importance.  "[A] question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson*, 930 F.2d at 1206 (quoting 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Grossman, Federal Practice and Procedure § 3930, at pp. 159-60 (1977) (footnote omitted)).  This case is currently scheduled for a jury trial in February 2006.  As plaintiffs have observed, "the legal standards applicable to emissions calculations will substantially affect" the expert witness testimony and other evidence presented in this case.  U.S. Mem. at 2.  The pre-trial preparations for the parties and the Court will be substantial.  In the weeks before trial, the parties will surely contest the admissibility of reams of historical evidence and the relevance of numerous elements of proof and avenues of argument based upon the Court's ruling on the applicable emissions test.  Cinergy anticipates that trial itself will take from 3-4 weeks and involve substantial expert witness testimony.  The parties' trial presentations will depend in large part upon which emissions increase test applies.

The parties, the Court, and the citizens who sit on the jury would all save time and expense if this trial were conducted only once.

If the Seventh Circuit resolves the emissions increase question on an expedited basis, one trial — at most — will be required.  Indeed, if the Seventh Circuit holds that the statute, regulations, and its opinion and *WEPCo* remand order requiring EPA to determine "whether the renovated plant would cause a significant net emissions increase if it were operated under present hours and conditions," *Wisconsin Electric Power Co. v. Reilly*, 893 F.2d 901, 918 n.14 (7th Cir. 1009) ("*WEPCo*"), requires a threshold demonstration of an increase in the hourly emissions rate, then no trial may be necessary at all.[2]  By contrast, if the Court does not grant interlocutory review and, after a trial, the Seventh Circuit ultimately holds that the proper legal test is the test Cinergy advocates, the first trial will have been wasted and further proceedings in this Court will be required.

The interests of the parties, the Court, and the public in avoiding the waste and duplication of this time and effort thus weigh heavily in favor of interlocutory review.  *See Johnson*, 930 F.2d at 1206 (noting that "[p]ractical considerations" warranted an interlocutory appeal where the case would otherwise proceed to judgment, "followed by an appeal," followed by still further proceedings); *Resolution Trust Corp. v. Gallagher*, 1992 WL 315218, at *4 (N.D. Ill. 1992) (certifying the question of the governing standard of liability for interlocutory review because the "granting of an interlocutory appeal will avoid the possibility of our having to retry the case on a different standard of liability").  Here, too, granting interlocutory review will

---

[2] When the district court in *Duke Energy* held that the proper test was "whether Duke Energy's projects caused an increase in annual net emissions, assuming constant hours and conditions of operation," the parties stipulated that Duke Energy's projects would not result in an increase in hourly emissions rates, and the district court entered judgment for Duke Energy.  *United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619, 654 (M.D.N.C. 2003) ("*Duke Energy I*"); *see also*

5

enable the parties and the Court to avoid the possibility of multiple proceedings involving two different theories of the proper "emissions increase" test.

### C. This Question of Law Is Contestable.

The question presented here is plainly contestable. Reasonable judicial minds across the nation have reached diametrically opposing conclusions in answering this question of law. *Compare* Order at 7-12 (adopting EPA's interpretation of the test for emissions increases), *with Duke Energy I*, 278 F. Supp. 2d at 654 (holding that the proper test was whether a project "caused an increase in annual net emissions, assuming constant hours and conditions of operation"); *United States v. Alabama Power Co.*, 372 F. Supp. 2d 1283, 1307 (N.D. Ala. 2005) (same); *Duke Energy II*, 411 F.3d 539 (affirming *Duke Energy I* on the ground that EPA must interpret the NSR and NSPS definitions of "modification" consistently); *cf. United States v. Ohio Edison Co.* 276 F. Supp. 2d 829 (S.D. Ohio 2003) (deferring to EPA's interpretation of rules promulgated in 1992).[3] These decisions present an unavoidable conflict —indeed, this Court expressly "disagree[d] with . . . the *Duke Energy [I]* court" in reaching its own conclusion. Order at 10.[4] The existence of conflicting judicial positions weighs heavily in favor of granting interlocutory review. *See, e.g., In re Bridgestone/Firestone, Inc.*, 212 F. Supp. 2d 903, 909-10 (S.D. Ind. 2002) (examining "whether other courts have adopted conflicting positions regarding the issue of law proposed for certification").

---

*United States v. Duke Energy Corp.*, 411 F.3d 539, 546 (4th Cir. 2005) ("*Duke Energy II*").

[3] This Court also interpreted the D.C. Circuit's analysis in *New York v. EPA*, 413 F.3d 3 (D.C. Cir. 2005), as supporting EPA's position. Although Cinergy respectfully submits that the D.C. Circuit's decision does not govern the question presented here, this analysis further supports the conclusion that the case law requires clarification by the controlling Court of Appeals.

[4] This conflict will not disappear on its own, because the Fourth Circuit recently denied the United States' petition to rehear the *Duke Energy* case before a panel or en banc. *See United States v. Duke Energy*, No. 04-1763 (4th Cir. Aug. 30, 2005).

6

Moreover, given the importance of the Seventh Circuit's decision in *WEPCo* with respect to the question presented here, the Seventh Circuit should be provided an opportunity to speak to the meaning of its opinion and remand instruction in that case. The courts analyzing the emissions increase question have split with respect to the meaning to be attributed to *WEPCo*. The *Duke Energy I* court expressly cited the *WEPCo* decision in support of its holding that "a net emissions increase can result only from an increase in the hourly rate of emissions." *See Duke Energy I*, 285 F. Supp. 2d at 640, 644-45 (citing *WEPCo*, 893 F.2d at 918 n.14); *see also Alabama Power*, 372 F. Supp. 2d at 1293 (adopting the *Duke Energy* court's analysis); *Duke Energy II*, 411 F.3d at 549 n.7 (observing that the NSR rules "can be interpreted consistently with pre-existing principles — the NSPS regulations — as the district court demonstrated"). By contrast, this Court held that the emissions increase issue is one of first impression in this Circuit that the *WEPCo* decision left open. *See* Order at 10. It is imperative that the Seventh Circuit be given the opportunity to address this issue and resolve any question as to the meaning of its decision in *WEPCo*. Given the nationwide importance of the question presented, the nationwide conflict in its resolution, and the central role of the *WEPCo* decision in these cases, this question deserves the Seventh Circuit's immediate attention.

        **D.**       **Resolution of this Question of Law Will Expedite the Litigation.**

"The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3930 (1996). An interlocutory appeal may "materially advance the ultimate termination of the litigation" if it may save the time and resources of the parties and the court. "[T]he significance of gains from reversal and the hardship on the parties in their particular circumstances" are

7

important considerations.  *In re Bridgestone/Firestone, Inc.*, 212 F. Supp. 2d at 907 (quoting *Praxair, Inc. v. Hinshaw & Culbertson*, 1997 WL 662530, at *4 (N.D. Ill. 1997)).

As stated above, the question of the proper emissions test under NSR is central to this case, and the final resolution of that question could "fundamentally alter" the parties' presentations at trial.  *See Branham Corp. v. Newland Resources LLC*, 2005 WL 1115856 at *3 (S.D. Ind. Mar. 30, 2005) (granting leave to appeal under the § 1292(b) standard because the interlocutory appeal "may fundamentally alter the manner" in which the case proceeded).  Moreover, the expedited resolution of the question could save the parties, the Court, and the jury from the burden and expense of the multiple proceedings that would otherwise occur if the Seventh Circuit ultimately reverses the Order.  See *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 2005 WL 1070681, at *4 (S.D. Ind. 2005), *rev'd on other grounds*, 2005 WL 1802967 (Fed. Cir. July 20, 2005) (granting leave to appeal because "[t]he waste of scarce time and resources would be substantial" if two trials were required); *Florida East Coast Ry. Co. v. CSX Transp., Inc.*, 1993 WL 57534 at *2 (N.D. Ill. 1993) (same).  The parties and the Court have already invested considerable time and resources in litigating this case, and the pre-trial preparations and ultimate trial presentation will require far more.  In addition, the presentation of a jury trial in this case will require the service of several members of the public for at least one month.  *See Gallagher*, 1992 WL 315218, at *4 (granting motion for certification because "the whole trial will need to be repeated" if a later appeal were successful, but "[if] an appeal is taken now, this possibility of retrial will no longer exist").  This time and expense will all be for nothing if the Seventh Circuit ultimately determines the emissions formula advocated by EPA and adopted by the Court to be incorrect.  Rather than run the risk of enduring expensive, duplicative, and wasteful proceedings, the Court should certify an immediate appeal.

E.      **This Motion Was Filed Within a Reasonable Time**

Cinergy is filing its motion nine business days after the Court's August 29, 2005 Order and two business days after the September 8, 2005 Order. This time period falls well within the boundaries of "reasonableness" as interpreted and applied by the Seventh Circuit. *See Boim*, 291 F.3d at 1008 (concluding that motions filed over one month after entry of the district court's order were filed "within a reasonable period of time").

## CONCLUSION

For the foregoing reasons, Cinergy respectfully requests that this Court amend its Order to state that the question of the proper NSR emissions increase test is a controlling question of law as to which there are substantial grounds for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). Cinergy further requests that the Court certify the question presented for interlocutory appeal.

DATED:  September 12, 2005            Respectfully Submitted,

CINERGY CORP, CINERGY SERVICES, INC., PSI ENERGY, INC., AND THE CINCINNATI GAS & ELECTRIC COMPANY

By:   /s/ Stephen M. Nickelsburg
Attorneys for Cinergy Corp., Cinergy Services, Inc., PSI Energy, Inc. and The Cincinnati Gas & Electric Company

Scott R. Alexander
Robert R. Clark
John D. Papageorge
Debra McVicker Lynch
Sommer Barnard Attorneys, PC
One Indiana Square, Suite 3500
Indianapolis, IN  46204

James A. King
Scott E. North
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, OH  43215

Julie L. Ezell
Cinergy Services, Inc.
1000 East Main Street
Plainfield, IN 46168-1782

Thomas C. Green
Mark D. Hopson
Samuel B. Boxerman
Kathryn B. Thomson
Frank R. Volpe
Stephen M. Nickelsburg
Sidley Austin Brown & Wood LLP
1501 K Street, NW
Washington, DC  20005

DC1 793084v.4