UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| STATE OF NEW YORK, STATE OF | ) | |
| CONNECTICUT, STATE OF NEW JERSEY, | ) | |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| HOOSIER ENVIRONMENTAL COUNCIL, | ) | |
| OHIO ENVIRONMENT COUNCIL, | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:99-cv-1693-LJM-VSS |
| | ) | |
| CINERGY CORPORATION; PSI ENERGY, | ) | |
| INC.; CINCINNATI GAS & ELECTRIC CO., | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**
**REGARDING THE DEMAND GROWTH EXCLUSION**

This matter is before the Court on the USA's request for the Court to make the purely legal

determination of the requirement of the "Demand Growth Exclusion" to the Clean Air Act's

("CAA") New Source Review ("NSR") permit provisions. The USA filed the present motion. In

response, defendants Cinergy Corporation; PSI Energy, Inc.; and Cincinnati Gas & Electric Co.

(collectively, "Cinergy") argue that the issue is not relevant and that the Court need not make a

determination. The parties have fully briefed the issue and it is now ripe for ruling. For the reasons

explained herein, the USA's motion is **GRANTED**.

## I.  BACKGROUND

The circumstances of this case are familiar. The present motion involves what has been

deemed the "Demand Growth Exclusion." When a source determines whether a project will cause

a net increase in emissions, it compares the actual emissions during a "baseline" period to the projected actual emissions after the change. *See United States v. Ohio Edison Co.*, 276 F. Supp.2d 829, 863-64 (S.D. Ohio 2003). The baseline period is generally the two years preceding the change. 40 C.F.R. § 52.21(b)(21)(ii). The Demand Growth Exclusion grew out of the case of *Wisconsin Electric Power Co. v. Reilly*, 893 F.2d 901 (7th Cir. 1990). It states that a source may:

> [e]xclude, in calculating any increase in emissions that results from the particular physical change or change in the method of operation at an electric utility steam generating unit, that portion of the unit's emissions following the change that could have been accommodated during the representative baseline period and is attributable to an increase in projected capacity utilization at the unit that is unrelated to the particular change, including any increased utilization due to the rate of electricity demand growth for the utility system as a whole.

57 Fed. Reg. 32314, 32334 (July 21, 1992).

The parties in this case have exchanged expert reports. The USA's experts have opined that the projects at issue in this case resulted in significant net emissions increases, based largely on the fact that the projects increased the hours that the units were available to operate. One of Cinergy's experts, Mr. Matt Harris, has criticized the USA's theory, stating that: "A fundamental premise of plaintiffs is that the Cinergy component replacements would case the units to generate more electricity. . . . In fact, all of the Cinergy units could have accommodated the plaintiffs' small predicted increases in production during the baseline period selected by plaintiffs." Pltf's Ex. 3. at 33.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal procedural rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S.

317, 327 (1986); *see United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Summary judgment is granted if the all the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if it might affect the outcome of the suit in light of the substantive law. *See id.*

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Wollin v. Gondert*, 192 F.3d 616, 620 (7th Cir. 1999); *Schroeder v. Barth, Inc.*, 969 F.2d 421, 423 (7th Cir. 1992). This burden does not entail producing evidence to negate claims on which the opposing party has the burden of proof. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *See Wollin*, 192 F.3d at 621.

When considering a summary judgment motion, a court must draw all reasonable inferences "in the light most favorable" to the opposing party. *Id.* at 621; *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998); *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992). If a reasonable fact finder could find for the opposing party, then summary judgment is inappropriate. *Stop-N-Go of Madison, Inc. v. Uno-Ven Co.*, 184 F.3d 672, 677 (7th Cir. 1999); *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp.*, 477 U.S. at 322; *Thomas & Betts Corp.*, 138 F.3d at 291; *Shields Enters., Inc.*, 975 F.2d at 1294.

## III. DISCUSSION

The USA has made this motion because Cinergy's expert, Mr. Harris, disputes what he calls a "fundamental premise" of the USA's theory that the projects at issue "would cause the units to generate more electricity." Mr. Harris says that, instead, "all of the Cinergy units could have accommodated the plaintiffs' small predicted increases in production during the baseline period selected by plaintiffs. . . . without the component replacements." Pltf's Ex. 3 at 33.

First, Cinergy responds that the Demand Growth Exclusion is not the proper subject of a motion for summary judgement, because Cinergy has not sought to invoke it. Mr. Harris' testimony, Cinergy argues, only "describes the facts Cinergy's experts relied upon in determining that Cinergy's projects would not be expected to cause an emissions increase." Defs' Br. at 1. In other words, Cinergy claims that its experts merely have opined that it was reasonable for Cinergy to predict that its projects would not cause emissions increases, because its units could have met additional demand in the absence of the projects. *Id.* at 2-3. Second, Cinergy argues that the Demand Growth Exclusion is not relevant because only the 1980 rules apply in this case.

What the USA essentially seeks here is a ruling on how the Court will instruct the jury as to causation. The question at trial will be whether Cinergy should have projected that certain physical changes – the projects at issue in this lawsuit – would *cause* an increase in emissions. When comparing Mr. Harris' statements with the USA's interpretation of the Demand Growth Exclusion, a ripe dispute is not apparent. Yet, it is clear from Cinergy's opposition brief that it disagrees with the USA's proposed standard of causation. Because the parties have spent the time briefing this issue, the Court will rule on the USA's motion, to determine the causation standard to be used at trial.

Before an owner or operator can make a modification to an existing source, the NSR rules

4

require a pre-construction permit. *See* 42 U.S.C. § 7475(a). A "[m]ajor modification means any physical change in or change in the method of operation of a major stationary source that would result in: a significant emissions increase." 40 C.F.R. § 52.21(b)(2)(I). As this Court already has explained, for NSR purposes the post-project emissions rate is determined before the project begins. *See United States of America v. Southern Ind. Gas & Elec. Co.*, No. IP99-1692-C-M/F, 2002 WL 1629817, *3 (S.D. Ind. July 18, 2002). The Court also has established that the method for calculating an increase is to compare the actual emissions during the baseline to the projected actual emissions after the change. *See* Docket No. 558.

An increase in hours or production rate are not considered physical changes, *id.* § 52.21(b)(2)(iii)(f), and thus those alone cannot be considered a "modification." *See* Docket No. 558 at 10-11. Emissions increases that would have occurred regardless of the project, "in response to independent factors, such as system-wide demand growth . . . do not result from the change and shall be excluded from the projection of future actual emissions." 57 Fed. Reg. 32314, 32326 (July 21, 1992). All of this is a way of saying that for NSR purposes, an increase in emissions must be *caused* by the physical change to be included in the calculation of projected actual emissions.

The Demand Growth Exclusion, then, sets forth the rule that in making the projection, "that portion of the unit's emissions following the change that could have been accommodated during the representative baseline period and is attributable to an increase in projected capacity utilization at the unit that is unrelated to the particular change" is not included. 57 Fed. Reg. at 32334. The Demand Growth Exclusion is another way of emphasizing, and clarifying, the causation element. Emissions increases that would occur regardless of whether a physical change is made should be subtracted from the calculation.

While the parties appear to agree that the physical change must cause the emissions increase,

they disagree on the precise language to explain this causation. The USA argues that to exclude an increase, it must be completely unrelated to the physical change and entirely caused by independent factors. Cinergy argues that the increase should be included in the calculation only if it could not have occurred "but for" the physical change. Cinergy disputes that an independent factor must be the complete cause of an increase for the increase to be excluded.

For the sake of clarification, the Court must grant the USA's motion, and rule that an increase in emissions may be excluded from the "actual to projected actual" calculation if (1) the unit could have accommodated the increase before the physical change and (2) the increase is unrelated to the physical change. In other words, the Demand Growth Exclusion applies to emissions increases that could have been predicted or projected regardless of whether a physical change was to occur.

## IV. CONCLUSION

For the reasons stated herein, the USA's motion for summary judgment is **GRANTED**.

IT IS SO ORDERED this 9th day of November, 2005.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

6

Distributed electronically to:

Scott R. Alexander
SOMMER BARNARD ATTORNEYS, PC
salexander@sommerbarnard.com

Kevin P. Auerbacher
STATE OF NEW JERSEY
DEPT. OF LAW & PUBLIC SAFETY
auerbkev@law.dol.lps.state.nj.us

Christopher D. Ball
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Deborah Nicole Behles
U.S. DEPARTMENT OF JUSTICE
deborah.behles@usdoj.gov

Samuel B. Boxerman
SIDLEY AUSTIN BROWN & WOOD LLP
sboxerman@sidley.com

David T. Buente
SIDLEY AUSTIN BROWN & WOOD LLP
dbuente@sidley.com

Robert R. Clark
SOMMER BARNARD ATTORNEYS, PC
rclark@sommerbarnard.com

Larry Martin Corcoran
ENVIRONMENTAL & NATURAL RESOURCES DIVISION
larry.corcoran@usdoj.gov

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
miked@k2d2.com

Steven David Ellis
ENVIRONMENTAL & NATURAL RESOURCES
steven.ellis@usdoj.gov

Julie L. Ezell
CINERGY SERVICES, INC.
julie.ezell@cinergy.com

Richard Mark Gladstein
U.S. DEPARTMENT OF JUSTICE
richard.gladstein@usdoj.gov

Thomas Charles Green
SIDLEY AUSTIN BROWN & WOOD LLP
tcgreen@sidley.com

Maurice A. Griffin
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
maurice.griffin@dol.lps.state.nj.us

R. Keith Guthrie
kgmail@comcast.net

Sarah Dale Himmelhoch
U.S. DEPARTMENT OF JUSTICE
sarah.himmelhoch@usdoj.gov

Ann Renfrew Johnston
LAW OFFICE OF ANN JOHNSTON
annrjohnston@aol.com

Eugene J. Kelly Jr.
NEW YORK STATE ATTORNEY GENERAL
epaejk@oag.state.ny.us

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

James A. King
PORTER WRIGHT MORRIS & ARTHUR LLP
jking@porterwright.com

Christine F. Lewis
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christine.lewis@dol.lps.state.nj.us

James A. Lofton
U.S. DEPARTMENT OF JUSTICE
jim.lofton@usdoj.gov

Debra McVicker Lynch
SOMMER BARNARD ATTORNEYS, PC
dlynch@sommerbarnard.com

Jon C. Martin
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Kimberly P. Massicotte
OFFICE OF THE ATTORNEY GENERAL
kimberly.massicotte@po.state.ct.us

Carmel Alicia Motherway
CONNECTICUT ATTORNEY GENERAL
carmel.motherway@po.state.ct.us

Michael Joseph Myers
NEW YORK STATE DEPARTMENT OF LAW
michael.myers@oag.state.ny.us

Stephen M. Nickelsburg
SIDLEY AUSTIN BROWN & WOOD LLP
snickels@sidley.com

Scott E. North
PORTER WRIGHT MORRIS & ARTHUR LLP
snorth@porterwright.com

John D. Papageorge
SOMMER BARNARD ATTORNEYS, PC
jpapageorge@sommerbarnard.com

Crissy Lyn Pellegrin
ENVIRONMENTAL PROTECTION AGENCY
pellegrin.crissy@epa.gov

Jean Patrice Reilly
STATE OF NEW JERSEY
reilljea@law.dol.lps.state.nj.us

Robert T. Rosenthal
NEW YORK ATTORNEY GENERAL'S OFFICE
robert.rosenthal@oag.state.ny.us

Jeffrey K. Sands
UNITED STATES DEPT. OF JUSTICE
jeffrey.sands@usdoj.gov

J. Jared Snyder
OFFICE OF THE ATTORNEY GENERAL
jared.snyder@oag.state.ny.us

Jose A. Suarez
OFFICE OF THE ATTORNEY GENERAL
jose.suarez@po.state.ct.us

Kathryn B. Thomson
SIDLEY AUSTIN BROWN & WOOD LLP
kthomson@sidley.com

Katherine Lynn Vanderhook
UNITED STATES DEPARTMENT OF JUSTICE
katherine.vanderhook@usdoj.gov

Gaylene Vasaturo
U.S. ENVIRONMENTAL PROTECTION AGENCY
vasaturo.gaylene@epa.gov

Frank R. Volpe
SIDLEY AUSTIN BROWN & WOOD LLP
fvolpe@sidley.com

Distributed via U.S. Postal Service to:

Barbara Fruehling Gambill
Cinergy Services Inc.
Atrium II 25th Floor
P O Box 960
Cincinnati, OH 45201-0960

8