IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> STATE OF NEW YORK, STATE OF NEW ) <br> JERSEY, STATE OF CONNECTICUT, ) <br> HOOSIER ENVIRONMENTAL COUNCIL, ) <br> and OHIO ENVIRONMENTAL COUNCIL, ) <br> ) <br> Plaintiff-Intervenors, ) <br> ) <br> v. ) <br> ) <br> CINERGY CORP., CINERGY SERVICES, ) <br> INC., PSI ENERGY, INC., and THE ) <br> CINCINNATI GAS & ELECTRIC ) <br> COMPANY, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No. IP99-1693 C-M/S |

**MEMORANDUM IN SUPPORT OF**
**CINERGY'S MOTION *IN LIMINE* TO EXCLUDE PORTIONS OF THE PROPOSED**
**TESTIMONY OF PLAINTIFFS' WITNESS BRUCE BIEWALD**

**INTRODUCTION**

Plaintiffs accuse the Defendants ("Cinergy") of undertaking "major modifications" at various Cinergy plants over the last 20 years without first obtaining permits required by the Clean Air Act's New Source Review rules. At trial, Plaintiffs plan to offer seven expert witnesses to try to prove their case. Much of the proposed testimony of one of these experts, Bruce Biewald, is irrelevant to the issues in this litigation, not helpful to the trier of fact, outside Mr. Biewald's areas of expertise, or based on insufficient data. Cinergy asks that all such testimony by Mr. Biewald be excluded.

**ARGUMENT**

I. **THE COURT MUST EXCLUDE IRRELEVANT, UNHELPFUL EXPERT TESTIMONY AND TESTIMONY AN EXPERT IS NOT QUALIFIED TO OFFER**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 534 (7th Cir. 2005). The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Under Rule 702, an expert may testify if he has specialized knowledge and is qualified based on 'knowledge, skill, experience, training, or education[.]'" *United States v. Gray*, 410 F.3d 338, 347 (7th Cir. 2005). The Seventh Circuit instructs that "a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Judges also must ensure that any expert testimony presented to the jury is relevant. *See Fuesting*, 421 F.3d at 534 (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993)) (citing Fed.R.Evid. 702); *see also* Fed. R. Evid. 402 (irrelevant testimony is inadmissible). Testimony is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. In the expert context, that means a witness may not offer expert testimony unless that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Seventh Circuit holds:

> An expert's credentials and methodology may be impeccable, but if the proffered testimony fails the general test of relevance under Rule 402, or if, in the words of Rule 702 it is not likely to "assist the trier of fact to understand the evidence or to determine a fact in issue," then the district court should reject the proffer.

*United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996).  Thus, "[w]hen analyzing the relevance of proposed testimony, the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Smith*, 215 F.3d at 718.

## II. MUCH OF MR. BIEWALD'S TESTIMONY IS IRRELEVANT AND UNHELPFUL

Plaintiffs have asserted that several component replacements at Cinergy's electric generating units over the last twenty years were "modifications" requiring New Source Review (NSR) permits.  Plaintiffs cannot prove their NSR claims unless they can prove that each of the Cinergy component replacements at issue is a physical change that would cause an increase in "the amount of any air pollutant emitted by" the affected Cinergy plants.  CAA § 111(a)(4), 42 U.S.C. § 7411(a)(4) (defining "modification"); *see* CAA § 169(2)(C), 42 U.S.C. § 7479(2)(C) (PSD) (adopting the NSPS definition); CAA § 171(4), 42 U.S.C. § 7501(4) (Non-attainment NSR) (same).

Bruce Biewald will not be offering any testimony on this point.  Deposition of Bruce Biewald (Oct. 27, 2005) ("Biewald Depo.") (excerpts at Ex. 1) at 197.  Indeed, Plaintiffs apparently do not know *how* they will be using Mr. Biewald:

> [Cinergy Counsel]  Q.  All right.  What is the opinion you're going to express at trial in this case, Mr. Biewald?
>
> [Plaintiffs' Counsel]  MS. VANDERHOOK:  Objection.  Calls for speculation.
>
> MR. NORTH:  Speculation about what he is going to testify to at trial?

3

> MS. VANDERHOOK: I stated my objection. Are you asking for a classification [*sic*]?

Biewald Depo. at 163. When pressed, Mr. Biewald says he generally aims to "put [Cinergy's] planning and decision-making in context." Biewald Dep. at 197.

Assuming Mr. Biewald is merely a "context" witness, he offers no actual expert "opinions." Instead, he proposes to discuss generally "issues of utility regulation," among others. *See* Expert Report of Bruce Biewald (May 19, 2005) ("Biewald Rep.") (excerpts at Ex. 2) at 2. General "context" about utility regulation is not relevant to what the Court identified as the central issue in this case – "whether the changes Cinergy made to its emitting sources were modifications." Order on Cross-Motions for Partial Summary Judgment Regarding the Applicable Test for Emissions Increases (Document # 558) (Sept. 8, 2005) at 2. Nor, for example, does the jury in this case need to hear general expert testimony from Mr. Biewald about the identities and histories of the state consumer agencies and environmental organizations in Indiana and Ohio, *see* Biewald Rep. at 3, or utility deregulation and restructuring in Ohio in the last decade, *see* Biewald Rep. at 4. These topics are too far removed from the central issues in this case. Thus, Cinergy asks that this Court bar Mr. Biewald from testifying on such topics, to "avoid needless consumption of time." Fed. R. Evid. 611(a)(2).

Several other portions of Mr. Biewald's report do nothing more than summarize or simply *quote* discovery produced by Cinergy, without any additional clarification or elaboration. Even if it were relevant (for Rule 401 purposes) to the issues in this case, this testimony is unnecessary; it does not "assist the trier of fact…." *Smith*, 215 F.3d at 718. *See Rondout Valley Central Sch. Dist. v. The Coneco Corp.*, 321 F. Supp. 2d 469, 479 (N.D.N.Y. 2004) (*citing United States v. Amuso*, 21 F.3d 1251, 1263-64 (2d Cir. 1994) (expert testimony cannot mirror testimony offered by a fact witness or just recite the facts)).

For instance, Mr. Biewald purports to explain PSI's "procedures for evaluating specific construction projects." Biewald Rep. at 19. But, because Mr. Biewald has never been employed by PSI, *see* Biewald Dep. at 81 (testifying that he has never been employed by an electric utility"), and has no *personal* knowledge on the subject, he simply quotes and/or paraphrases PSI's 1990-1992 "Project Evaluation Guides" and a 1986 document titled "Future Planning for Generating Plants." *See* Biewald Rep. at 19-23. Mr. Biewald's discussion of the "CG&E Method for Economic Analysis of Capital Projects" similarly just quotes and characterizes three pages from CG&E's 1990 "Electric Production Dept. Procedure Manual." *See* Biewald Rep. at 24. And, his discussion of the construction of CG&E's Zimmer Plant (which is not at issue in this case) and CG&E's life-extension planning in the 1980s, again, simply quotes, paraphrases, and/or summarizes various CG&E Electric Long-Term Forecast Reports, a Public Utilities Commission of Ohio "Staff Reconnaissance Report," a presentation written for an industry group committee meeting, and two articles from a CG&E newsletter, about which he has no personal knowledge. *See* Biewald Rep. at 30-32.

Testimony that merely "recites the [alleged] facts," such as this, is not proper expert testimony. *Rondout Valley Central Sch. Dist.*, 321 F. Supp. 2d at 479. The jurors do not need Mr. Biewald to read or summarize documents for them – particularly documents that Mr. Biewald did not prepare or use and about which he has no personal knowledge. The jury can read themselves any documents Plaintiffs properly proffer as admissible evidence. Plaintiffs are simply improperly trying to sneak "facts" in through an expert witness. Plaintiffs should not be permitted to use Mr. Biewald as a way to avoid the burden of actually tendering evidence to support their claims.

### III.   MR. BIEWALD IS NOT QUALIFIED TO DISCUSS SEVERAL OF THE TOPICS IN HIS EXPERT REPORTS

That much of Mr. Biewald's report simply quotes Cinergy documents and repeats prior deposition testimony by Cinergy's witnesses suggests that Mr. Biewald lacks the knowledge or experience necessary to develop his own opinions.  Mr. Biewald's deposition testimony amply confirms this.

For example, Mr. Biewald's report describes the PROVAL software that PSI allegedly used to evaluate proposed projects at its plants for budgeting purposes.  *See* Biewald Rep. at 19-23, 27, 33.  As explained above, the report simply paraphrases and quotes PSI documents.  *See id.*  Mr. Biewald's testimony at deposition explains why:  Mr. Biewald has never actually used the PROVAL software himself.  *See generally* Biewald Dep. at 111-117.  His deposition testimony demonstrates that a few PSI documents were his *only* source of information about PROVAL:

> "PSI, CG&E and Cinergy all did have methodologies that they used for planning their capital projects that are described, in the case of PSI, in the PROVAL, project evaluation tool, manuals." [Biewald Dep. at 222.]
>
> "My understanding of the PROVAL methodology, *as described in the company's manuals*, is that it included recommended changes in future unit utilization." [Biewald Dep. at 235 (emphasis added).]
>
> "… I look at the documents and the PROVAL manuals.  And I'm testifying that, in my opinion, these are not – these, the PROVAL manuals and the settlement agreement that the commission approved are not about prioritization; they're about economic evaluation of the projects." [Biewald Dep. at 246.]
>
> "… there are baseline capacity factor forecasts in the PROVAL Manual…." [Biewald Dep. at 248.]

Mr. Biewald offers several opinions about the PROVAL software, even though he has no personal experience with it. In fact, Mr. Biewald does not even know which, if any, of the Cinergy projects were evaluated with the PROVAL software. *See* Biewald Dep. at 242.

Mr. Biewald also offers several opinions about the PROMOD software program, "a detailed probabilistic production costing tool that is generally used for short to medium term planning analysis." Biewald Rep. at 13; *see also generally id.* at 14-18, 32-33. But, again, Mr. Biewald has never run PROMOD himself. *See* Biewald Dep. at 114. He has never even worked for or been a partner or shareholder in a company that held a license to use PROMOD. *See* Biewald Dep. at 115-116. As with his PROVAL testimony, Mr. Biewald relies on the software user manual and Cinergy documents to explain how the program works and how, allegedly, Cinergy used it. *See* Biewald Rep. at 16, 33.

Mr. Biewald also has no legal training. He has never obtained a law degree. *See* Biewald Rep. at Attachment A (Biewald's *curriculum vitae*, listing a bachelors' degree in architecture); Biewald Dep. at 29 ("I am not a lawyer"). This does not, however, stop him from attempting to offer legal opinions regarding a settlement agreement that PSI allegedly entered into in a rate case before the Indiana Utility Regulatory Commission in 1986. *See* Biewald Rep. at 25-26. In his report, Mr. Biewald opines that PSI's alleged use of PROVAL to evaluate projects (something he does not know occurred) was consistent with this 1986 settlement agreement. *See* Biewald Rep. at 27. In his deposition, Mr. Biewald elaborated on this belief:

> Q. Okay. What is your expert opinion with respect to PROVAL you mentioned?
>
> MS. VANDERHOOK: Objection. Asked and answered.
>
> THE WITNESS: That in the case of PSI they had an obligation to do the sort of economic evaluation required – the sort of economic evaluation described in the PROVAL guides, and that that

7

>   obligation grew out of a regulatory concern in the mid-1980s that the company – the company's projects be economically justified.
>
>   So the settlement – there was a settlement agreement that required an economic evaluation. There was a method designed by the company to implement those economic engineering evaluations, and that that method is, in my view, a standard present value of cost/benefit cash flows, cost/benefit analysis, and that that was the method that the company had for evaluating capital projects at existing plants in that time period.
>
>   BY MR. NORTH:
>
>   Q.  *So your opinion is the company had a legal requirement, and it complied with it; is that right*?
>
>   MS. BEHLES:  Objection. Mischaracterizes his testimony. And compound.
>
>   THE WITNESS:  As well as some of the specifics of that method. ….

Biewald Dep. at 229-231 (emphasis added). *See also id.* at 221-222, 237, 255 (similar). Mr. Biewald also offers his "legal" opinion that Cinergy "has an obligation to dispatch its resources in an economical manner and … deviations from economic dispatch would … essentially violate the … expectations of the regulatory commissions…." Biewald Dep. at 226-227. Again, Mr. Biewald does not let his lack of qualifications stop him from offering opinions on areas outside his areas of expertise.

Nor does Mr. Biewald let his lack of education in statistics prevent him from critiquing Cinergy expert Dr. Gary L. Liberson's statistical analyses. *See* Expert Report of Bruce Biewald / Confidential Rebuttal Report (Sept. 15, 2005) ("Biewald Rebuttal Rep.") (Ex. 3) at 7-12. Dr. Liberson will testify at trial that his statistical analyses demonstrate, among other things, that Cinergy was correct to expect unit reliability after its replacements projects would be equivalent to unit reliability before the replacements were made. One of the several statistical tests that supports Dr. Liberson's conclusions is the "Runs" test. Mr. Biewald specifically challenges the

8

data Dr. Liberson relied upon to perform the "Runs" test and the conclusions Dr. Liberson reached from the results of that test. *See* Biewald Rebuttal Rep. at 11-12. But, again, Mr. Biewald is not qualified to issue these challenges. As Mr. Biewald's resume shows, and as he confirmed at deposition, he has no formal education in statistics. *See* Biewald Rep. at Attachment A; Biewald Dep. at 153. He has never studied the field. *See* Biewald Dep. at 156. Nor did he consult the statisticians he works with, in forming his opinions on Dr. Liberson's analyses. *See* Biewald Dep. at 157.

Rule 702 states that a witness may qualify as an expert "by knowledge, skill, experience, training, or education." Fed. R. Civ. P. 702. Mr. Biewald fails on every count. Mr. Biewald's testimony demonstrates that he has no personal knowledge of PSI's use of PROVAL or PROMOD, no personal experience operating those programs, no statistics degree, and no law degree. Because Mr. Biewald is not qualified to discuss the PROVAL or PROMOD project evaluation software, PSI's alleged legal obligations to use PROVAL, Dr. Liberson's "Runs" test analysis, or Cinergy's legal obligations generally, Cinergy asks that all such testimony be excluded.

## IV.     MR. BIEWALD RELIES ON INSUFFICIENT INFORMATION TO SUPPORT HIS TESTIMONY

Finally, expert testimony may be admitted only if it is "based upon sufficient facts or data." Fed. R. Evid. 702. Expert opinions "unsupported by sufficient facts or data" should be stricken. *McLaughlin Equip. Co. v. Newcourt Credit Group, Inc.*, 2004 U.S. Dist. LEXIS 13939, at *17-18 (S.D. Ind.); *see also Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1110 (S.D. Ind. 2003) ("Where a proffered expert's testimony rests on insufficient data and unreliable methodology, [the requirements of Rule 702] are not met.").

Here, Mr. Biewald offers an opinion on the expert testimony of Cinergy expert Matt Harris based on an incomplete record. For example, in his expert report, Mr. Harris writes: "Cinergy has always used a five-year rolling average of historical unit forced outage rates for projections of unit operations." Biewald Rebuttal Rep. at 5, quoting Harris Rep. at 16. Mr. Biewald claims this is not true. But, Mr. Biewald admits that he read no more than 0.2% of the production cost modeling runs (including PROMOD runs) that Cinergy produced. *See* Biewald Dep. at 177-180. And, he cites only two PROMOD input files from the early 1990s to support his conclusion that Mr. Harris is mistaken. *See* Biewald Rebuttal Rep. at 3-5. Based on just these two sources, he opines that "it was common practice for [Cinergy] to use identical forced outage rates for multiple generating units." Biewald Rebuttal Rep. at 3. Two files from the early 1990s are not sufficient information on which to base an opinion about the manner in which Cinergy projected forced outage rates over the last 20 years. Because Mr. Biewald's opinion on this issue rests on insufficient data, Cinergy asks that Mr. Biewald's opinion on this matter be excluded as well.

## **CONCLUSION**

For the reasons provided above, Defendants Cinergy Corp., Cinergy Services, Inc., PSI Energy, Inc., and the Cincinnati Gas & Electric Co. respectfully request that this Court bar Mr. Bruce Biewald from offering the irrelevant, unhelpful, and/or unsupported testimony described above.


DATED:      December 22, 2005

Respectfully submitted,

CINERGY CORP., CINERGY SERVICES, INC., PSI ENERGY, INC., AND THE CINCINNATI GAS & ELECTRIC COMPANY

By: /s/ Kathryn B. Thomson
Attorneys for Cinergy Corp., PSI Energy, Inc. and The Cincinnati Gas & Electric Company

Robert R. Clark
Scott R. Alexander
John D. Papageorge
Debra McVicker Lynch
Sommer Barnard Attorneys, PC
One Indiana Square, Suite 3500
Indianapolis, IN  46204

Thomas C. Green
Mark D. Hopson
Samuel B. Boxerman
Kathryn B. Thomson
Frank R. Volpe
Sidley Austin Brown & Wood LLP
1501 K Street, NW
Washington, DC  20005

Julie L. Ezell
Cinergy Services, Inc.
1000 East Main Street
Plainfield, IN  46168-1782

James A. King
Scott E. North
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, OH  43215-6194

**Certificate of Service**

I hereby certify that on December 22, 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**FOR PLAINTIFF, UNITED STATES OF AMERICA:**

Jeffrey K. Sands
E-mail:  jeffrey.sands@usdoj.gov
Richard Mark Gladstein
E-mail:  richard.gladstein@usdoj.gov
Sarah Dale Himmelhoch
E-mail:  sarah.himmelhoch@usdoj.gov
Deborah N. Behles
E-mail:  deborah.behles@usdoj.gov
Katherine L. Vanderhook
E-mail:  katherine.vanderhook@usdoj.gov
United States Department of Justice

Thomas E. Kieper
E-mail:  tom.kieper@usdoj.gov
United States Attorney's Office

Larry Martin Corcoran
E-mail:  larry.corcoran@usdoj.gov
Steven David Ellis
E-mail:  steven.ellis@usdoj.gov
Environmental and Natural Resources Division
United States Department of Justice

Gaylene Vasaturo
E-mail:  vasaturo.gaylene@epa.gov
Charles V. Mikalian
E-mail:  mikalian.charles@epa.gov
Ignacio L. Arrazola
E-mail:  arrazola.ignacio@epa.gov
Thomas Williams
E-mail:  williams.tom@epa.gov
Crissy Pellegrin
E-mail:  pellegrin.crissy@epa.gov
United States Environmental Protection Agency

FOR PLAINTIFF-INTERVENOR, THE STATE OF NEW YORK:

Eugene J. Kelly, Jr.
E-mail:  epaejk@oag.state.ny.us
Robert T. Rosenthal
E-mail:  robert.rosenthal@oag.state.ny.us
J. Jared Snyder
E-mail:  jared.snyder@oag.state.ny.us
Michael J. Myers
E-mail:  michael.myers@oag.state.ny.us
New York State Attorney General

FOR PLAINTIFF-INTERVENOR, THE STATE OF CONNECTICUT:

Carmel Alicia Motherway
E-mail:  carmel.motherway@po.state.ct.us
Jose A. Suarez
E-mail:  jose.suarez@po.state.ct.us
R. Keith Guthrie
E-mail:  kgmail@comcast.net
Connecticut Attorney General

FOR PLAINTIFF-INTERVENOR, THE STATE OF NEW JERSEY:

Kevin P. Auerbacher
E-mail:  auerbkev@law.dol.lps.state.nj.us
Jean Patrice Reilly
E-mail:  reilljea@law.dol.lps.state.nj.us
Jon C. Martin
E-mail: martijon@law.dol.lps.state.nj.us
State of New Jersey, Department of Law
 & Public Safety

Christine F. Lewis
Email:  christine.lewis@dol.lps.state.nj.us
Christopher D. Ball
Email:  christopher.ball@dol.lps.state.nj.us
Maurice A. Griffin
E-mail:  maurice.griffin@dol.lps.state.nj.us
New Jersey Office of the Attorney General

FOR THE DEFENDANTS:

Julie L. Ezell
E-mail:  julie.ezell@cinergy.com
Cinergy Services, Inc.

James A. King
E-mail:  jking@porterwright.com
Scott E. North
E-mail:  snorth@porterwright.com
Porter Wright Morris & Arthur, LLP

Samuel B. Boxerman
E-mail:  sboxerman@sidley.com
David T. Buente
E-mail:  dbuente@sidley.com
Kathryn B. Thomson
E-mail:  kthomson@sidley.com
Thomas Charles Green
E-mail:  tcgreen@sidley.com
Frank R. Volpe
E-mail:  fvolpe@sidley.com
Mark Hopson
E-mail:  mhopson@sidley.com
Sidley Austin Brown & Wood, LLP

FOR PLAINTIFFS-INTERVENORS, HOOSIER ENVIRONMENTAL COUNCIL AND OHIO
ENVIRONMENTAL COUNCIL:

Ann Renfrew Johnston
Law Office of Ann Johnston
E-mail:  annrjohnston@aol.com

I hereby certify that on December 22, 2005, a copy of the foregoing was mailed, by first class mail, postage prepaid and properly addressed to the following:

Kimberly P. Massicotte
Attorney General's Office
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Richard Blumenthal
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120

Barbara Fruehling Gambill
Cinergy Services, Inc.
Atrium II, 25th Floor
P.O. Box 960
Cincinnati, OH 45201-0960

Stefanie A. Brand
RJ Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ 08625

James A. Murphy
RJ Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ 08625

Mary E. Costigan
RJ Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, NJ 08625

  /s/ Kathryn B. Thomson