UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | |
| STATE OF NEW YORK, STATE OF ) | |
| CONNECTICUT, and STATE OF NEW ) | |
| JERSEY, ) | |
|     Intervenor Plaintiffs, ) | |
| ) | |
| HOOSIER ENVIRONMENTAL COUNCIL, ) | |
| OHIO ENVIRONMENT COUNCIL, ) | |
|     Third-Party Plaintiffs, ) | |
| ) | |
| vs. ) | 1:99-cv-1693-LJM-VSS |
| ) | |
| CINERGY CORPORATION; PSI ENERGY, ) | |
| INC.; and CINCINNATI GAS & ELECTRIC ) | |
| CO., ) | |
|     Defendants. ) | |

**ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE LEGAL STANDARD FOR THE ROUTINE MAINTENANCE, REPAIR AND REPLACEMENT EXCLUSION**

This matter is before the Court on Plaintiffs', United States of America, State of New York, State of New Jersey, Hoosier Environmental Council, and Ohio Environmental Counsel (collectively "Plaintiffs"), Motion for Partial Summary Judgment on the Legal Standard for the Routine Maintenance, Repair and Replacement ("RMRR") Exclusion. Plaintiffs raise the purely legal questions of 1) whether the standard articulated and applied by this Court in *United States v. Southern Indiana Gas & Elec. Co*., IP 99-1693 C-M/S, applies to the case at bar; 2) whether the application of this standard turns on whether a particular type of project has become common in the industry; and 3) whether Cinergy Corporation, PSI Energy Inc., and Cincinnati Gas & Elec. Co.

(collectively "Cinergy"), bear the burden of proof and persuasion as to whether any particular project constitutes RMRR. The parties have fully briefed the issue and it is now ripe for ruling. For the reasons explained herein, Plaintiffs' motion is **GRANTED in part and DENIED in part**.

## I. LEGAL BACKGROUND

The instant motion resolves purely legal questions. Accordingly, the parties have not set forth statements of undisputed facts. In the claims relevant to this motion, Plaintiffs allege that Cinergy undertook twenty-seven projects at six plants over the period 1983 to 2001, each resulting in a significant net increase in the emissions of pollution, and these increased emissions required a permit and the installation of pollution control devices.

The purpose of the Clean Air Act ("CAA") is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). It directs the Environmental Protection Agency ("EPA") to promulgate National Ambient Air Quality Standards ("NAAQS") specifying allowable concentrations of air pollutants in the ambient air. *Id*. § 7409. States in turn must develop state implementation plans ("SIPs") to achieve and maintain NAAQS. Id. § 7410.

In 1977, Congress amended the CAA to introduce the two New Source Review ("NSR") programs, which require new and modified sources to obtain permits prior to construction and to install state-of-the-art pollution control technology. The NSR provisions of the Act, which include the Prevention of Significant Deterioration ("PSD") and the Non-attainment New Source Review Standards ("NNSR") programs, focus on ambient air quality, and apply to sources that have the potential to adversely impact such air quality. 42 U.S.C. §§ 7471, 7479(1).

To assist in balancing economic concerns and the need for clean, breathable air, Congress elected to focus its compliance efforts on new and modified sources of air pollution. *See Chevron U.S.A. Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 851 (1984) (describing the permit program established by the 1977 Amendments as a balance between "the economic interests in permitting capital improvements to continue and the environmental interest in improving air quality."). As a result, existing sources were not required to immediately install modern controls. Rather, for existing sources, the requirement to install pollution control devices and obtain a permit is triggered by any "modification" to the source that increases the amount of pollution the source emits. *See* 42 U.S.C. § 7475; 40 C.F.R. § 52.51 ("PSD provisions"); 42 U.S.C. §§ 7501-7515.

The Act defines a modification for purposes of the NSR provisions to include:

> any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted.

42 U.S.C. § 7411(a)(4); 42 U.S.C. § 7479. As the Seventh Circuit observed in a landmark CAA decision, the definition of "any physical change" is broad:

> Even at first blush, the potential reach of these modification provisions is apparent: the most trivial activities – the replacement of leaky pipes, for example – may trigger the modification provisions if the change results in an increase in the emissions of a facility.

*Wisc. Elec. Power Co. v. Reilly*, 893 F.2d 901, 905 (7th Cir. 1990) ("*WEPCO*"). However, both NSPS and PSD contain a regulatory exemption to the "physical change" definition that is relevant to this case. The EPA promulgated specific exceptions to the modification provisions including the "routine maintenance repair or replacement" exclusion at issue in this motion. Specifically, the EPA provided that: "A physical change or change in the method of operation shall not include: (a) Routine

3

maintenance, repair and replacement . . . ." 40 C.F.R. § 52.21(b)(2)(iii) (1999); *see also* Ohio Admin. Code § 3745-31-01(III)(5); Ind. Admin. Code tit. 326 r. 2-3-1.

## II. DISCUSSION[1]

### A. RMRR STANDARD

The parties dispute the scope of RMRR, and ask the Court to articulate the legal standard to be applied to the various Cinergy sites that are the subject of this suit. The Court begins with its determination of the proper RMRR standard in *United States v. Southern Indiana Gas & Elec. Co.*, 245 F. Supp. 2d 994, 1008 (S.D. Ind. 2003) ("*SIGECO I*"). The Court rearticulated and applied that standard in *United States v. So. Ind. Gas & Elec. Co.*, 2003 WL 446280, at *2 (S.D. Ind. Feb. 18, 2003) ("*SIGECO II*"), and *United States v. So. Ind. Gas & Elec. Co.*, 258 F. Supp. 2d 884, 886 (S.D. Ind. 2003) ("*SIGECO III*") (same). In *SIGECO I*, the EPA proffered the following interpretation

---

[1] An interlocutory appeal to the Seventh Circuit has been granted regarding this Court's August 29, 2005, Order, regarding the proper emission test under the CAA NSR provisions. The interlocutory appeal in this case was granted pursuant to 28 U.S.C. § 1292(b), which provides that "application for appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." Thus, while it is true that, ordinarily, the filing of a notice of appeal divests this Court of jurisdiction over the matters involved in the appeal, an interlocutory appeal does not divest the Court of jurisdiction over aspects of the case that are ancillary to the discreet issues on appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-59 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000) ("the district court retains jurisdiction to act only if the order being appealed or the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court").

Accordingly, motions relating to the applicable emissions test shall not be ruled upon while the appeal is pending. However, there are many pending motions that relate to provisions of the NSR regulations other than those at issue on appeal, which the Court shall address.

of the CAA regulations, the same standard they advocate here:

> This interpretation has three hallmarks. First, the exemption applies to a narrow range of activities, in keeping with [the] EPA's limited authority to exempt activities from the [CAA.] Second, the exemption applies only to activities that are routine for a generating unit. The exemption does not turn on whether the activity is prevalent within the industry as a whole. Third, no activity is categorically exempt. [The] EPA examines each activity on a case-by-case basis, looking at the nature and extent, purpose, frequency, and cost of activity.

*SIGECO I*, 245 F.3d at 1008 (citing Pl.'s Opp. to Def.'s Mot. for Summary Judgment on Fair Notice at 1) (emphasis removed). In concluding that the EPA's interpretation of RMRR was reasonable and persuasive, and that the Court would defer to it in that litigation,[2] the Court noted that the interpretation urged by the EPA, and ultimately adopted by the Court, was the same interpretation that the Seventh Circuit upheld more than a decade ago in *WEPCO*. *SIGECO I*, 245 F.3d at 1008.

The parties do not dispute that the RMRR analysis entails a fact intensive, case-by-case determination, taking into account factors such as the project's nature, extent, frequency, and cost. *See* Def.'s Br. Resp. at 7-8; Pl.'s Rep. at 3. Cinergy acknowledges, contrary to Plaintiffs' accusations, that "no one factor is dispositive" under this multi-factor, "case-by-case" analysis, and no factor is given more weight than another. Def.'s Br. Resp. at 7. Cinergy further recognizes that, "all factors" must be considered, meaning "any information that helps inform the decision" must be

---

[2] As noted in *SIGECO I*, the RMRR exemption is found in the CAA regulations promulgated by the EPA pursuant to a Congressional grant of authority, and "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." 245 F. Supp. 2d at 1008 (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Further, courts defer even more to an agency's construction of its own regulations. *Id.* (citing *Lyng v. Payne*, 476 U.S. 926, 939 (1986); *WEPCO*, 893 F.3d at 907) (additional citations omitted). This is especially true when the subject is a complex or techincal one like the CAA. *Id.* (citing *Chevron*, 467 U.S. at 848 ("The [CAA] Amendments of 1977 are a lengthy, detailed, technical, complex, and comprehensive response to a major social issue.")).

considered and weighted by the factfinder. *Id*. at 7-8.

The parties take issue with the second hallmark of the EPA's interpretation – that "the exemption applies only to activities that are routine for a generating unit. The exemption does not turn on whether the activity is prevalent within the industry as a whole." *SIGECO I*, 245 F. Supp. 2d at 1008.

In the end, the parties' arguments are much ado about nothing. They both advocate the application of the *SIGECO I* ruling, yet they accuse the opposing party of advocating a more rigorous standard. The parties simply exaggerate their opponents' positions. Cinergy accuses Plaintiffs of advocating an interpretation "that a project is RMRR *only if* the project is routine for a particular generating unit." *Id*. at 1 (original emphasis). To the contrary, Plaintiffs acknowledge that they do not "seek . . . to consolidate the multi-factor, case specific test for whether a project falls within the [RMRR] exclusion found in the 1980 and 1992 regulations into a test that simply and only turns on the question of whether the project is routine at the unit. Instead, Plaintiffs "simply ask this Court to impose the same standard it imposed in its decision" in *SIGECO* [*I*]. Pl.'s Br. Rep. at 1-3.

Plaintiffs accuse Cinergy of articulating its test for RMRR "as turning exclusively, or almost exclusively, on whether similar projects have been taken by other utilities." Pl.'s Br. Supp. at 10. Stated another way, Plaintiffs believe that Cinergy advocates "an interpretation that distorts and elevates one of [the] factors [– prevalence within the industry]." Yet, Cinergy acknowledges that it does not advocate a pure "frequency in the industry" test. Def.'s Br. Resp. at 10. Instead, it merely asks the Court to again hold (as it did in *SIGECO I*) that "the frequency of the project within industry" is *relevant* to determining whether a particular project is routine. *Id*. at 12 (emphasis added).

6

The Court articulated explicitly in the *SIGECO* orders that the application of the RMRR exclusion relies on a common sense application of a multi-factor test examining the nature, extent, purpose, frequency, and cost of the particular project. *See SIGECO I*, 245 F. Supp. 2d at 1008; *SIGECO II*, 2003 WL 447280, at *2 (emphasis added). Moreover, the Court has also acknowledged that "[a]lthough the [RMRR] exception does not *turn on* whether a certain type of project is prevalent within industry as a whole, the frequency with which similar projects take place throughout industry informs this 'common-sense' analysis." *SIGECO III*, 258 F. Supp. 2d at 886 (citing Clay Memo; *WEPCO*, 893 F.2d at 911 ("*WEPCO* did not identify, and the EPA did not find, even a single instance of renovation work at any electric utility generating station that approached the Port Washington life extension project in nature, scope or extent.") (emphasis added)). Further, the Court has observed that the *WEPCO* opinion "supports the view that the frequency of the project at the particular unit and the frequency of the project within industry are *both* relevant considerations." *SIGECO I*, 245 F. Supp. 2d at 1016. *See also id*. at 1004 n.7 (stating that "how often certain projects take place throughout industry . . . [is] relevant to whether" activities will qualify for the RMRR exemption); *SIGECO II*, 2003 WL 210224595 at *3 (treatment of similar projects relevant to RMRR determination). The Court's rulings in *SIGECO I, II*, and *III* are clear. In this case, the factfinder will consider all relevant evidence on the issue of the RMRR exemption, including the frequency with which a type of replacement occurs in the utility industry.

### B. BURDEN OF PROOF AND PERSUASION

Plaintiffs also request that the Court consider which party bears the burden of proof as to the RMRR exemption. The party claiming the benefit of an exemption to compliance with a statute

7

bears the burden of proof as to the exemption. *See United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 366 (1967) (holding that the general rule is that the party claiming the benefit of exemption to a statute bears the burden of proof). Thus, it is Cinergy's burden to show that the activities at issue in this suit are exempt from CAA compliance.

### III. CONCLUSION

For the reasons set forth above, the Plaintiffs', United States of America, State of New York, State of New Jersey, Hoosier Environmental Council, and Ohio Environmental Counsel, motion for partial summary judgment is **GRANTED in part and DENIED in part**.

IT IS SO ORDERED this 16th day of February, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distributed electronically to:

Scott R. Alexander
SOMMER BARNARD ATTORNEYS, PC
salexander@sommerbarnard.com

Kevin P. Auerbacher
STATE OF NEW JERSEY, DEPT. OF LAW & PUBLIC SAFETY
auerbkev@law.dol.lps.state.nj.us

Christopher D. Ball
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Deborah Nicole Behles
U.S. DEPARTMENT OF JUSTICE
deborah.behles@usdoj.gov

Samuel B. Boxerman
SIDLEY AUSTIN LLP
sboxerman@sidley.com

David T. Buente
SIDLEY AUSTIN BROWN & WOOD LLP
dbuente@sidley.com

Robert R. Clark
SOMMER BARNARD ATTORNEYS, PC
rclark@sommerbarnard.com

Larry Martin Corcoran
ENVIRONMENTAL AND NATURAL RESOURCES DIVISION
larry.corcoran@usdoj.gov

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
miked@k2d2.com

Steven David Ellis
ENVIRONMENTAL & NATURAL RESOURCES
steven.ellis@usdoj.gov

Julie L. Ezell
CINERGY SERVICES INC
julie.ezell@cinergy.com

Cynthia Marie Ferguson
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT & NATURAL RESOURCES
cynthia.ferguson@usdoj.gov

Richard Mark Gladstein
U.S. DEPARTMENT OF JUSTICE
richard.gladstein@usdoj.gov

Thomas Charles Green
SIDLEY AUSTIN LLP
tcgreen@sidley.com

Maurice A. Griffin
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
maurice.griffin@dol.lps.state.nj.us

R. Keith Guthrie
kgmail@comcast.net

Sarah Dale Himmelhoch
U.S. DEPARTMENT OF JUSTICE
sarah.himmelhoch@usdoj.gov

Ann Renfrew Johnston
LAW OFFICE OF ANN JOHNSTON
annrjohnston@aol.com

Eugene J. Kelly Jr.
NEW YORK STATE ATTORNEY GENERAL
epaejk@oag.state.ny.us

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

James A. King
PORTER WRIGHT MORRIS & ARTHUR LLP
jking@porterwright.com

Christine F. Lewis
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christine.lewis@dol.lps.state.nj.us

James A. Lofton
U.S. DEPARTMENT OF JUSTICE
jim.lofton@usdoj.gov

Debra McVicker Lynch
SOMMER BARNARD ATTORNEYS, PC
dlynch@sommerbarnard.com

Jon C. Martin
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Kimberly P. Massicotte
OFFICE OF THE ATTORNEY GENERAL
kimberly.massicotte@po.state.ct.us

Carmel Alicia Motherway
CONNECTICUT ATTORNEY GENERAL
carmel.motherway@po.state.ct.us

Michael Joseph Myers
NEW YORK STATE DEPARTMENT OF LAW
michael.myers@oag.state.ny.us

Stephen M. Nickelsburg
SIDLEY AUSTIN LLP
snickels@sidley.com

Scott E. North
PORTER WRIGHT MORRIS & ARTHUR LLP
snorth@porterwright.com

John D. Papageorge
SOMMER BARNARD ATTORNEYS, PC
jpapageorge@sommerbarnard.com

Crissy Lyn Pellegrin
ENVIRONMENTAL PROTECTION AGENCY
pellegrin.crissy@epa.gov

Jean Patrice Reilly
STATE OF NEW JERSEY
reilljea@law.dol.lps.state.nj.us

Robert T. Rosenthal
NEW YORK ATTORNEY GENERAL'S OFFICE
robert.rosenthal@oag.state.ny.us

Jeffrey K. Sands
UNITED STATES DEPT. OF JUSTICE
jeffrey.sands@usdoj.gov

J. Jared Snyder
OFFICE OF THE ATTORNEY GENERAL
jared.snyder@oag.state.ny.us

Kathryn B. Thomson
SIDLEY AUSTIN LLP
kthomson@sidley.com

Katherine Lynn Vanderhook
UNITED STATES DEPARTMENT OF JUSTICE
katherine.vanderhook@usdoj.gov

Gaylene Vasaturo
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
vasaturo.gaylene@epa.gov

Frank R. Volpe
SIDLEY AUSTIN BROWN & WOOD LLP
fvolpe@sidley.com


Distributed via U.S. Postal Service to:

Barbara Fruehling Gambill
Cinergy Services Inc.
Atrium II 25th Floor
P O Box 960
Cincinnati, OH 45201-0960