UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | ) ) ) | |
| STATE OF NEW YORK, STATE OF NEW<br>JERSEY, STATE OF CONNECTICUT,<br>HOOSIER ENVIRONMENTAL COUNCIL,<br>and OHIO ENVIRONMENTAL COUNCIL,<br>Plaintiff-Intervenors, | ) ) ) ) ) ) | |
| vs. | ) ) | 1:99-cv-1693-LJM-JMS |
| CINERGY CORP., PSI ENERGY, INC., and<br>THE CINCINNATI GAS & ELECTRIC<br>COMPANY,<br>Defendants. | ) ) ) ) | |

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE REMAINING CLAIMS (DOC. NO. 1364) & REQUEST FOR HEARING (DOC. NO. 1366)

This cause is before the Court on defendants', Cinergy Corp., PSI Energy, Inc., and the

Cincinnati Gas & Electric Company (collectively, "Cinergy" or "Defendants"), Motion for Partial

Summary Judgment on the Remaining Claims (Docket No. 1364) and Cinergy's Request for a

Hearing on the Motion for Partial Summary Judgment on the Remaining Remedial Claims (Docket

No. 1366).  Last year this Court granted partial summary judgment to plaintiffs, United States of

America ("USA" or the "government"), and plaintiff-intervenors, State of New York, State of New

Jersey, State of Connecticut, Hoosier Environmental Council and Ohio Environmental Council (all

defendants, collectively, "Plaintiffs"), on the particulate matter violations at Beckjord, and earlier

this year a jury found that Defendants violated the New Source Review ("NSR") program of the

Clean Air Act ("CCA") on four construction projects at the Wabash River plant in West Terre Haute,

Indiana. Defendants now seek a partial summary judgment in their favor on Plaintiffs' prayers for relief from alleged past health and environmental effects and a corresponding limit on the scope of discovery. Plaintiffs oppose the motion. A familiarity with the facts of this case and prior proceedings is presumed. The Court decides as follows.

# I. <u>DISCUSSION</u>

Defendants contend that the scope of the injunctive relief available for NSR violations is limited to prospective relief—additional controls or limitations on emissions at the three Wabash River units covered by the jury's verdict. Plaintiffs' prayer for relief asks this Court to, *inter alia*, order the Defendants "to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the[ir] violations" of the CAA. (USA's Third Am. Compl. at 69, ¶ 5.) Defendants argue that the CAA does not authorize remediation for past health and environmental effects and that even if it did, this Court should decline to exercise that authority in this case.

A purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). In 1977 Congress amended the CAA by introducing two NSR programs, which required new and modified sources to obtain permits prior to construction and to install state-of-the-art pollution control technology. The purpose of those amendments was "to protect public health and welfare from any actual or potential adverse effect . . . from air pollution." 42 U.S.C. § 7470. Plaintiffs state that there are two broad elements of relief which they seek: first, prospective relief, which likely will involve installing of state-of-the-art pollution controls and

obtaining permits for the Wabash River plant units. Second, they seek retrospective relief, "through specific measures to reduce pollution at Wabash River beyond what is required for prospective compliance" "to make up for the nearly two decades of illegal pollution." (Pls.' Opp'n Cinergy's Mot. Partial Summ. J. 5-6.)[1]

Cinergy's motion for partial summary judgment focuses on § 113 of the CAA, which grants the district court "jurisdiction to restrain [a] violation [of the CAA], to require compliance, to assess [a] civil penalty, to collect any fees owed the United States . . . and to award any other appropriate relief." 42 U.S.C. § 7413(b).[2] The issue before this Court is whether this grant of equitable jurisdiction authorizes the district court to order Defendants to take actions to remedy, mitigate, and offset the harm to public health and the environment caused by the established CAA violations.

The Supreme Court's decision in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), is instructive. In *Porter*, the Supreme Court considered whether § 205(a) of the Emergency Price Control Act of 1942, allowed a district court to order restitution of rents collected in excess of the permissible maximums. *Id.* at 396. The Act did not contain a provision expressly allowing for restitution, but authorized a broad array of remedies including equitable ones. *Id.* at 397. The Supreme Court held that when the district court's equitable jurisdiction is invoked, "all the inherent

---

[1] Plaintiffs intend to seek similar relief for the PM violations at Beckjord units 1 and 2.

[2] The provision states in part:
Any action under this subsection may be brought in the district court of the United States for the district in which the violation is alleged to have occurred, or is occurring, or in which the defendant resides, or where the defendant's principal place of business is located, and such court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty, to collect any fees owed the United States under this chapter (other than subchapter II of this chapter) and any noncompliance assessment and nonpayment penalty owed under section 7420 of this title, and to award any other appropriate relief.

equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction," unless the statute by "clear and valid legislative command" or "necessary and inescapable inference" restricts the court's equitable powers. *Id.* at 398. Further, because the public interest was involved, the "equitable powers assume[d] an even broader and more flexible character than when only a private controversy is at stake." *Id.* Only then would the district courts have the power to do what is necessary and fair under the circumstances to do complete justice. *Id.* The Supreme Court determined that restitution was authorized based on the court's equity jurisdiction and because the Act did not expressly or impliedly restrict that jurisdiction. *Id.* at 390, 402-403.

Furthermore, the Supreme Court said that the statutory language authorized orders enjoining violations of the Act, orders enforcing compliance with the Act, and "a permanent or temporary injunction, restraining order, or other order." *Id.* at 399. It reasoned that "other order" referred to a remedy other than an injunction or restraining order. *Id.* The Supreme Court determined that a restitution order could be considered an "other order" in two ways: First, it could be "an equitable adjunct to the injunction decree." *Id.* It also could be "appropriate and necessary to enforce compliance with the Act" and "to give effect to its purposes." *Id.* at 400. The Supreme Court observed that a restitution order could help assure future compliance by eliminating "one's illegal gains." *Id.*

In *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960), the Supreme Court expanded on *Porter*. In *Mitchell*, it considered whether the district court in an action brought by the Secretary of Labor could order reimbursement for lost wages caused by a violation of the Fair Labor Standards Act. *Id.* at 289. The statutory language granting the district courts equitable jurisdiction was arguably more narrow than that considered in *Porter*: The Act gave district courts "jurisdiction

. . . for cause shown, to restrain violations" of the Act. 29 U.S.C. § 217. The Supreme Court held that the district court had jurisdiction to order reimbursement for lost wages. *Mitchell*, 361 U.S. at 296. *See also United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1061 (10th Cir. 2006) (holding that the Food, Drug, and Cosmetic Act's grant of jurisdiction "to restrain violations" invoked the district court's full equitable powers and authorized an order for disgorgement of profits from violation of Act). In doing so, the Supreme Court rejected the appellate court's view that the equitable jurisdiction had to be expressly conferred by Congress or necessarily implied from a congressional enactment. *Mitchell*, 361 U.S. at 290. The *Mitchell* Court reiterated: "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction," *id.* at 291, and the district court has the equitable power "to provide complete relief in the light of statutory purposes," *id.* at 292.

In arguing for a more limited equitable authority, Cinergy relies on *Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996). In *Meghrig*, the Court considered whether a citizen suit under the Resource Conservation and Recovery Act ("RCRA") authorized an award of costs for cleaning up toxic waste that did not continue to pose a health or environmental danger. *Id.* at 481. RCRA's citizen suit provision allows a private party to bring suit against a responsible person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). The provision also grants the district court "jurisdiction . . . to restrain any person who has contributed or who is contributing" to waste problems, "to order such person to take such other action as may be necessary, or both." 42 U.S.C. § 6972(a). Based on this language the *Meghrig* Court held that RCRA's private citizen

suit provision did not authorize an order for compensation for past cleanup efforts. *Meghrig*, 516 U.S. 484. This conclusion was grounded on the two remedies described in the citizen suit provision and the harm to which the provision was directed—a present or future threat of harm. *Id.* at 484-86. In addition, the Supreme Court noted that RCRA was not principally designed to effect cleanup of waste sites. *Id.* at 483. The *Meghrig* Court also drew from a comparison of the relief available under RCRA's citizen suit provision and the similar provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which expressly allowed for cost recovery. *Id.* at 485.

*Meghrig* did not overrule *Porter* and *Mitchell*. Instead, it expressly recognized the *Porter* line of cases which hold "that district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress." *Id.* at 487. The *Meghrig* Court simply found an exception to this general rule based on the "limited remedies" described in RCRA's citizen suit provision and the "stark differences" between that section and CERCLA's cost recovery provisions. *Id.* Post-*Meghrig* the Supreme Court has cited *Porter* for the principle that "we should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,' or an 'inescapable inference' to the contrary." *Miller v. French*, 530 U.S. 327, 340-41 (2000) (quotations omitted). *Accord Bedrossian v. Nw. Mem. Hosp.*, 409 F.3d 840, 842-43 (7th Cir. 2005) (stating "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.").

It may be difficult to reconcile *Meghrig* with *Porter* and *Mitchell*, but the reasoning of the latter cases is more applicable here. First, the CAA, unlike the RCRA involved in *Meghrig*, does

not have another statute with analogous provisions that expressly allows for more expansive equitable powers. Second, RCRA's citizen suit provision was directed to a specific type of harm—a present or future threat of harm—which strongly suggests that past harms were not covered. Although § 7477 may share such a limitation, § 113 of the CAA is not so limited. Moreover, *Porter* and *Mitchell* were government enforcement actions, whereas, *Meghrig* was a private citizen suit. As the Supreme Court observed, where the public interest is involved, the court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Porter*, 328 U.S. at 398. Here, the USA is a plaintiff and is seeking to protect the public interest; the government's role makes this case more analogous to *Porter* and *Mitchell* than *Meghrig*. And thus, the Court's equitable powers are even broader and more flexible than if only private parties were seeking relief. Therefore, this Court adopts the general rule of *Porter*: "district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress." *Meghrig*, 516 U.S. at 487.

Applying this rule, this Court determines that it has the authority to order Defendants to take appropriate actions that remedy, mitigate and offset harms to the public and the environment caused by the Defendants' proven violations of the CAA. Section 113(b) invokes the Court's equity jurisdiction. The grant of jurisdiction is quite broad as § 113(b) authorizes this Court not only "to restrain" CAA violations, "to require compliance," with the CAA, to assess civil penalties, and to collect fees, but also "to award any other appropriate relief." 42 U.S.C. § 7413(b). Nothing in the CAA is a "clear and valid legislative command" or raises a "necessary and inescapable inference" that the full scope of the Court's equitable powers under § 113(b) is to be limited.

Other courts have concluded that similar language in other environmental statutes did not restrict the district court's equitable authority. *See, e.g.*, *U.S. Pub. Interest Research Group v. Atl. Salmon of Me., LLC*, 339 F.3d 23, 31 (1st Cir. 2003) (concluding that the Clean Water Act's ("CWA") citizen suit enforcement provision authorized injunctive relief that would remedy harm caused by past violation); *United States v. Deaton*, 332 F.3d 698, 714 (4th Cir. 2003) (deciding in a government enforcement action under the CWA that a district court had authority to order remediation); *United States v. Holtzman*, 762 F.2d 720, 724-25 (9th Cir. 1985) (concluding that a district court's "jurisdiction to restrain violations" of the CAA's motor vehicle emissions and fuel standards includes the power to enjoin otherwise lawful activity where necessary and appropriate to correct or dissipate the harmful effects of past violations). *Atlantic Salmon* and *Deaton* are of particular relevance here because the CWA's enforcement provisions were modeled after those of the CAA. *See S. Pines Assocs. v. United States*, 912 F.2d 713, 716 (4th Cir. 1990) (citing S. Rep. 92-414, *reprinted in* 1972 U.S.C.C.A.N. 3668, 3730 (1971)).

*Atlantic Salmon* was a citizen suit against two companies who were found to have polluted Maine waters. The CWA provides, with a few exceptions, that the discharge of a pollutant into navigable waters by a person is unlawful. One exception allows a discharge if the person holds an Environmental Protection Agency ("EPA") or state permit. *See Atl. Salmon*, 339 F.3d at 26. The CWA's citizen suit enforcement provision grants district courts "jurisdiction . . . to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties." 33 U.S.C. § 1365(a). The district court found that the companies violated the CWA, imposed civil penalties, and ordered injunctive relief. The companies challenged the injunction, arguing that it required more of them

than the CWA. *Atl. Salmon*, 339 F.3d at 27, 30. The First Circuit observed that if the companies had not violated the CWA and obtained a valid permit, the district court could not have issued an injunction that required more of them than the Act. *Id.* at 30. But because the companies had violated the CWA, the district court had the authority to issue an order to remedy pre-permit violations: "the court may grant additional injunctive relief governing the post-permit operations of the companies *insofar as the court is remedying harm caused by their past violations*." *Id.* at 31 (emphasis in *Atl. Salmon*). The court explained that this gives meaning to the grant of enforcement authority and emphasized that "a court's equitable power to enforce a statute includes the power to provide remedies for past violations[.]" *Id.*

In *Deaton*, the government sued property owners under the CWA for failing to obtain a required permit before digging a ditch on their property and depositing dirt in wetlands on their property. Finding a violation, the district court entered a remediation order which required the owners to fill in the ditch and restore the wetlands to their pre-violation condition. *Deaton*, 332 F.3d at 701-02. The Fourth Circuit rejected the property owners' argument that "the remedy for their failure to obtain a required permit should go no further than requiring them to do what would have been lawful in the first place." *Id.* at 714. The court reasoned that to simply require the owners to haul the dirt away instead of filling the ditch would allow them to benefit from their violation of the Act. The court found support for its conclusion in the CWA's goal of "'restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters.'" *Id.* (quoting 33 U.S.C. § 1251(a)). Both *Atlantic Salmon* and *Deaton* indicate that, unless otherwise specified by statute, a court has the equitable authority to order a full and complete remedy for harms caused by a past violation, and in doing so may go beyond what is necessary for compliance with the statute.

Moreover, in this case an order requiring Defendants to take actions that remedy, mitigate, and offset harms caused to the public and the environment by their past CAA violations would seem to give effect to the CAA's purpose "to protect and *enhance* the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401 (emphasis added). *See also* 42 U.S.C. § 7470 (stating the purpose of the PSD program is "to protect public health and welfare from any actual or potential adverse effect . . . from air pollution"). This Court therefore concludes that its equitable authority granted by § 113(b) includes the authority to order relief aimed at redressing the harms caused by Defendants' established violations of the CAA. In other words, this Court's equitable authority is not limited to providing prospective relief only.

All of the Defendants' efforts to persuade the Court that its equitable authority is limited prove unavailing. They cite *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190 (D.C. Cir. 2005), and *United States v. Alcoa, Inc.*, 98 F. Supp. 2d 1031 (N.D. Ind. 2000), where the courts decided that "appropriate relief" did not provide the authority to grant all traditional equitable remedies. In *Philip Morris*, the court concluded that 18 U.S.C. § 1964(a)'s grant of jurisdiction to issue orders "to prevent and restrain" Racketeer Influenced and Corrupt Organizations Act ("RICO") violations did not allow for disgorgement. 396 F.3d at 1200-02.[3] The court applied the canons of

---

[3] 1964(a) provides:
The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

*noscitur a sociis* and *ejusdem generis* and read § 1964(a) as authorizing, in addition to the remedies explicitly mentioned in the statute, only those remedies similar in nature. *Id.* at 1200. The enumerated remedies were all directed toward future conduct and separating the criminal from the RICO enterprise to prevent future violations; disgorgement was not directed at future conduct. The court thus found disgorgement dissimilar to the enumerated remedies. *Id.* The remedies explicitly mentioned in § 113, however, are not all directed at future conduct. As a result, *Philip Morris* is inapplicable here.

In *Alcoa*, the district court decided that its authority under § 309 of the CWA, 33 U.S.C. § 1319(b), was limited to issuing injunctions to restrain violations or require compliance. 98 F. Supp. 2d at 1036. However, the court concluded that the statute's grant of authority to issue an injunction "to require compliance" was sufficiently broad to include the remedy sought—sediment remediation—because the contamination was a direct result of the permit violations. *Id.* at 1039. Thus, *Alcoa* actually supports the Plaintiffs' view that the CAA's grant of equitable authority would include remediation of harm that directly resulted from Cinergy's CAA violations.[4] Moreover, as *Porter* suggests, an order to remediate the direct effects of Cinergy's CAA violations could be considered "appropriate and necessary to enforce compliance with" the CAA, give effect to its purposes, and assure future compliance. *See Porter*, 328 U.S. at 400 ("Future compliance may be more definitely assured if one is compelled to restore one's illegal gains.").

---

[4] The *Alcoa* court did note that the illegally discharged pollutants posed an ongoing threat of harm, *id.* at 1038, which may have made for a stronger case for allowing remediation as a means of achieving compliance than perhaps may be here where Cinergy's preconstruction permit violations do not constitute ongoing violations. But there seems to be a distinction between the CAA violation and the effects of such violation for which remedies are available.

Cinergy contends that the surrounding language of § 113 suggests that "any other appropriate relief" should be read as allowing relief only in support of the enumerated remedies. Under the principle of *ejusdem generis*, "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs. v. Mattel, Inc.*, 128 S. Ct. 1396, 1404 (2008). Under the principle of *noscitur a sociis*, "a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 128 S. Ct. 1830, 1839 (2008). The inclusion of the phrase "any other appropriate relief" signals Congress's intent that the specifically enumerated remedies not be the only remedies available. According to Defendants, the "any other appropriate relief" language only authorizes orders effectuating whatever restraints, compliance, or penalties a court imposes.

A more reasonable view is that the language authorizes a court to award the full range of equitable relief. *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 589 (1980) (concluding that the CAA's expansive language–"any other final action"–did not support a limiting construction and in the absence of legislative history to the contrary was to be construed as "*any other* final action"). Thus, the language does not limit the Court to ordering "restraints," "compliance," and "penalties," but rather, limits the Court to ordering remedies, which like those specifically enumerated, are equitable in nature. This interpretation of § 113 does not render the enumerated remedies superfluous.

Furthermore, §§ 167 and 304 of the CAA, 42 U.S.C. §§ 7477, 7604, do not indicate that mitigation of past health and environmental harms is beyond the purposes of § 113. Section 7477, which is the enforcement provision for the Prevention of Significant Deterioration of Air Quality part of the CAA, provides for prospective relief only. The citizen suit provision, § 7604, authorizes the

district courts to enforce emission standards and limitations and to apply civil penalties. But it does not follow from the fact that neither of these provisions allows for the types of relief that Plaintiffs seek that § 113 does not allow it either. The USA's action is, after all, not a citizen suit, but a government enforcement action. The provision limiting the use of civil penalties to "beneficial mitigation projects which are consistent with this chapter and enhance the public health or the environment" to no more than $100,000.00, § 7604(g)(2), does not evince an intent that there be no other mitigation projects. That provision applies to citizen suits. There are good reasons why Congress would allow the government a greater array of remedies in an enforcement action than it would give to private citizens, and it did vest the EPA with primary enforcement authority under the CAA. *See Ala. Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 490 (2004) ("Congress . . . vested EPA with explicit and sweeping authority to enforce CAA 'requirements' relating to the construction and modification of sources under the PSD program"); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) ("the citizen suit is meant to supplement rather than to supplant governmental action").

Defendants claim that the CAA's "comprehensive and reticulated" remedial scheme is strong evidence that Congress did not intend to authorize any remedies not specifically identified in the CAA. They rely solely on *Philip Morris* for support. However, they overlook, as did the *Philip Morris* majority, that the Act at issue in *Porter* had as comprehensive a remedial structure as RICO. *Philip Morris*, 396 F.3d at 1217 (Williams, J., dissenting). An additional concern of the *Philip Morris* court was that RICO had a criminal forfeiture provision, § 1963(a), and allowing disgorgement would raise concerns of duplicative recovery. *Id.* at 1200-01. There are no such concerns here with the CAA..

Defendants next argue that the CAA's legislative history confirms that § 113 does not authorize retrospective mitigation. They are incorrect. The CAA as originally enacted provided that the Administrator "may commence a civil action for appropriate relief, including a permanent or temporary injunction" in order "to restrain [a] violation [of the CAA] and to require compliance." 42 U.S.C. § 7413(b) (1971). In 1977, Congress amended the CAA to provide that the Administrator may "commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty" and expanded the jurisdictional provision to authorize district courts "to restrain [a] violation, to require compliance, to assess [a] civil penalty," to collect any fees owed the United States, and to award costs. The Clean Air Act Amendments of 1990 modified § 113 to further expand the district court's jurisdiction to include the authority to "award any other appropriate relief." Defendants point to the Senate Report to support their argument that the 1990 amendments merely highlighted the courts' authority to order penalties, restrain violations, and require compliance: "with respect to jurisdictional matters in existing section 113(b) of the [CAA], the bill authorized Federal district courts to collect any fees owed under the [CAA], and to award 'any other appropriate relief' when considering whether to provide injunctive relief or to impose civil penalties." S. Rep. No. 101-228, 1990 U.S.C.C.A.N. 3385, 3742 (1989). Instead, the Report emphasizes that the amendments to the enforcement provision expands the scope of activities that create liability:

> Among its chief provisions, this title broadens the scope of activities that can be the subject of civil or criminal sanctions and penalties by eliminating the current Act's references to specific sections, and by substituting more general references to separate titles in the Act.

*Id.* at 3740. *See also id.* at 3741 (stating "the bill amends [§] 113 of the Act . . . [by] expand[ing] the scope of activities subject to administrative, civil, or criminal enforcement activity"); *id.* at 3742 ("Amendments to [§] 113(b)-First, the bill expands the current authority of EPA to take enforcement actions under [§] 113(b) . . . by deleting the references to specific sections of the Act and replacing those references with language authorizing EPA to seek injunctive relief or civil penalties whenever any owner or operator . . . violates any requirement of an applicable implementation plan or violates 'any other requirement' of titles I, III, or IV of the Act"). The Senate Report further provides that the amendments impose liability for a broader range of violations:

> Liability for violations of the Act.-The bill amends [§] 113 of the Act to impose civil and criminal liability for violation of any requirement, prohibition, permit, rule or order issued under titles I, III, and IV. These amendments fill an important gap in the Act, which currently does not subject the violators of any significant regulations and orders to criminal and civil sanctions. Examples of such gaps are [§]167 and [§] 303 orders. This amendment is modeled after similar provisions in other environmental statutes, including the Toxic Substances Control Act (TSCA), 15 U.S.C. sections 2614 and 2615(b) (criminal penalties for, inter alia, failure or refusal to comply with "any rule promulgated or order issued ..." or with "any requirement prescribed by ..."); the Resource Conservation and Recovery Act (RCRA) section 3008, 42 U.S.C. section 6928 (administrative orders or civil action for "appropriate relief" for violation of "any requirements of this subchapter"); and the Marine Protection, Research and Sanctuaries Act, 33 U.S.C. section 1415 (civil, criminal and administrative liability for violations of, inter alia, regulations promulgated under the Act).

S. Rep. No. 101-228, 1990 U.S.C.C.A.N. 3385, 3744 (1989).

Defendants argue that Congress has explained that "RCRA is basically a prospective act designed to prevent improper disposal of hazardous wastes in the future," and since the amendments to § 113 were modeled after a RCRA provision, the CAA must be a prospective act designed to prevent future violations. The mere fact that these amendments were modeled after one provision in RCRA does not suggest that § 113 authorizes only prospective relief. After all, the amendments

were modeled after several other provisions in other environmental statutes as well.  While the citizen suit provisions of these statutes, 15 U.S.C. § 2619 and 33 U.S.C. § 1365, authorize only prospective relief, *see Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 6 (1981), the Toxic Substance Control Act ("TSCA") provisions, §§ 2614 and 2615(b), and the Marine Protection, Research, and Sanctuaries Act of 1972 ("MPRSA") provision, § 1415, which were cited in the Senate Report are not so clearly limited.  The legislative history does not clearly establish that § 113's "any other appropriate relief" language limits a court to awarding prospective relief only.

Defendants further argue that Congress has shown in other environmental statutes that it knows how to authorize courts to impose far-reaching retroactive mitigation and remediation projects when it intends to do so.  For example, the Federal Water Pollution Control Act (or CWA) contains "appropriate relief" language similar to § 113.  33 U.S.C. § 1319(b) (authorizing the Administrator "to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order" and granting the district courts "jurisdiction to restrain such violation and to require compliance.").  It would be error, however, to simply rely on a comparison to these other, different statutes to override the general rule that where a statute grants a court equitable authority, "all the inherent equitable powers . . . are available" unless there is a "clear and valid legislative command" or "necessary and inescapable inference" to the contrary.  *Porter*, 328 U.S. at 398.  Cinergy reverses this principle when it suggests that the absence of a detailed and specific enumeration of the equitable remedies available indicates that broad equitable remedies are unavailable.  And, interestingly, Cinergy's position on the scope of available remedies under § 113 here seems to conflict with its position in litigation with its

insurers over coverage costs. There it has argued that "any other appropriate relief" is not limited to an injunction requiring compliance and prevention of future harm but also "includes environmental projects that mitigate past harm." (Pls.' Opp'n, Ex. E, Cinergy's Reply in Support of Petition to Transfer in *Cinergy Corp. v. St. Paul Surplus Lines Ins. Co.*, 873 N.E.2d 105, 2007 WL 4349705, at *2 (Ind. Ct. App. Nov. 13, 2007)). The fact that Cinergy shares the Plaintiffs' view of the available remedies—when it suits its own interests—supports the conclusion that the Plaintiffs' view is reasonable.

Even assuming that the Court has the authority to award retrospective mitigation, Defendants submit that it should refrain from doing so here. They cite the costs to them, the impact on the length of the remedies trial, and the additional judicial resources that would be necessary. While the costs to Defendants could indeed be substantial, neither that, nor the fact that the Court will be required to expend more time and resources deciding these matters would justify ruling that retrospective mitigation and remediation are unavailable if otherwise appropriate. Defendants suggest that Plaintiffs should be barred from pursuing any relief other than the types they specifically mention in their brief, namely, additional measures designed to further reduce pollution from the Wabash River plant and similar types of measures for the Particulate Matter violations at the Beckjord units 1 and 2. While it seems that relief going beyond such measures would be too far afield from that which would be appropriate, without the benefit of an evidentiary presentation and the parties' focused arguments on the matter, it would be premature to make any such ruling at this stage of the proceedings.

Defendants also argue that Plaintiffs' delay in pursuing the Wabash River projects is another reason to preclude retroactive mitigation. This Court has indicated that a significant delay between

a violation and the USA's filing suit may be relevant in determining whether to grant injunctive or other equitable relief at all. Such a delay may also be relevant in determining the extent of such relief to be awarded. A determination on these questions awaits the presentation of evidence and factual development at trial, however.[5]

As the Supreme Court said, "[t]he great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Porter*, 328 U.S. at 398. The CAA invokes the district court's equitable jurisdiction and does not clearly limit that jurisdiction. Nothing in the CAA creates a "necessary and inescapable inference" that such jurisdiction is restricted. Therefore, this Court concludes that its equitable authority includes the granting of retrospective remedial relief.

---

[5] Cinergy submits that the unprecedented nature of the relief Plaintiffs seek suggests that such relief is unavailable. But no court has decided one way or another what remedies are available.

## II. **CONCLUSION**

For the foregoing reasons, defendants', Cinergy Corp., PSI Energy, Inc., and the Cincinnati Gas & Electric Company, Motion for Partial Summary Judgment on the Remaining Claims (Doc. # 1364) is **DENIED**.  Having found that oral argument is unnecessary, Defendants' Request for a Hearing on the Motion for Partial Summary Judgment on the Remaining Remedial Claims (Doc. # 1366) also is **DENIED**.

IT IS SO ORDERED this 14th day of October, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

Kevin P. Auerbacher
STATE OF NEW JERSEY, DEPT. OF
LAW & PUBLIC SAFETY
auerbkev@law.dol.lps.state.nj.us

Christopher D. Ball
NEW JERSEY OFFICE OF THE
ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Deborah Nicole Behles
US DEPARTMENT OF JUSTICE
deborah.behles@usdoj.gov

Thomas Andrew Benson
U.S. DEPARTMENT OF JUSTICE -
ENVIRONMENTAL ENFORCEMENT
thomas.benson@usdoj.gov

Samuel B. Boxerman
SIDLEY AUSTIN LLP
sboxerman@sidley.com

Phillip Brooks
US DEPARTMENT OF JUSTICE
phillip.brooks@usdoj.gov

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Larry Martin Corcoran
ENVIRONMENTAL AND NATURAL
RESOURCES DIVISION
larry.corcoran@usdoj.gov

Carol Lynn DeMarco
NEW JERSEY ATTORNEY GENERAL'S
OFFICE
carol.demarco@dol.lps.state.nj.us

Meghan Colleen Delaney
SIDLEY AUSTIN LLP
mberroya@sidley.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
miked@k2d2.com

Steven David Ellis
ENVIRONMENTAL & NATURAL
RESOURCES
steven.ellis@usdoj.gov

Julie L. Ezell
DUKE ENERGY LEGAL DEPARTMENT
julie.ezell@duke-energy.com

Cynthia Marie Ferguson
US DEPARTMENT OF JUSTICE -
ENVIRONMENT & NATURAL
RESOURCES
cynthia.ferguson@usdoj.gov

Richard Mark Gladstein
U.S. DEPARTMENT OF JUSTICE
richard.gladstein@usdoj.gov

Thomas Charles Green
SIDLEY AUSTIN LLP
tcgreen@sidley.com

Maurice A. Griffin
NEW JERSEY OFFICE OF THE
ATTORNEY GENERAL
maurice.griffin@dol.lps.state.nj.us

R. Keith Guthrie
ATTORNEY AT LAW
kgmail@comcast.net

Eugene J. Kelly Jr.
NEW YORK STATE ATTORNEY
GENERAL
eugene.kelly@oag.state.ny.us

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

James A. King
PORTER WRIGHT MORRIS & ARTHUR
LLP
jking@porterwright.com

Joseph M. Kowalczyk
NEW YORK STATE OFFICE OF THE
ATTORNEY GENERAL
joseph.kowalczyk@oag.state.ny.us

Christine F. Lewis
NEW JERSEY OFFICE OF THE
ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Jonathan F. Lewis
CLEAN AIR TASK FORCE
jlewis@catf.us

Debra McVicker Lynch
TAFT STETTINIUS & HOLLISTER LLP
dlynch@taftlaw.com

Jon C. Martin
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Kimberly P. Massicotte
OFFICE OF THE ATTORNEY GENERAL
kimberly.massicotte@po.state.ct.us

Carmel Alicia Motherway
CONNECTICUT ATTORNEY GENERAL
carmel.motherway@po.state.ct.us

Michael Joseph Myers
NEW YORK STATE DEPARTMENT OF
LAW
michael.myers@oag.state.ny.us

John D. Papageorge
TAFT STETTINIUS & HOLLISTER LLP
jpapageorge@taftlaw.com

Crissy Lyn Pellegrin
ENVIRONMENTAL PROTECTION
AGENCY
pellegrin.crissy@epa.gov

Jean Patrice Reilly
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Danielle Brody Rosengarten
US DEPT OF JUSTICE
danielle.rosengarten@usdoj.gov

Robert T. Rosenthal
NEW YORK ATTORNEY GENERAL'S
OFFICE
robert.rosenthal@oag.state.ny.us

Jeffrey K. Sands
UNITED STATES DEPT. OF JUSTICE
jeffrey.sands@usdoj.gov

Justin Aaron Savage
UNITED STATES DEPARTMENT OF
JUSTICE
justin.savage@usdoj.gov

J. Jared Snyder
OFFICE OF THE ATTORNEY GENERAL
jared.snyder@oag.state.ny.us

Kosta S. Stojilkovic
SIDLEY AUSTIN LLP
kstojilkovic@sidley.com

Kathryn B. Thomson
SIDLEY AUSTIN LLP
kthomson@sidley.com

Katherine Lynn Vanderhook
UNITED STATES DEPARTMENT OF
JUSTICE
katherine.vanderhook@usdoj.gov

Gaylene  Vasaturo
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY
vasaturo.gaylene@epa.gov

Frank R. Volpe
SIDLEY AUSTIN LLP
fvolpe@sidley.com

Distributed via U.S. Postal Service to:

Barbara Fruehling Gambill
CINERGY SERVICES INC.
Atrium II 25th Floor
P O Box 960
Cincinnati, OH 45201-0960

Dean M. Moesser
DUKE ENERGY CORPORATION
5400 Westheimer Court
Houston, TX 77056