UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| STATE OF NEW YORK, STATE OF NEW | ) | |
| JERSEY, STATE OF CONNECTICUT, | ) | |
| HOOSIER ENVIRONMENTAL COUNCIL, | ) | |
| and OHIO ENVIRONMENTAL COUNCIL, | ) | 1:99-cv-1693- LJM-JMS |
|     Plaintiff-Intervenors, | ) | |
| | ) | |
|     vs. | ) | |
| | ) | |
| CINERGY CORP., PSI ENERGY, INC., and | ) | |
| THE CINCINNATI GAS & ELECTRIC | ) | |
| COMPANY, | ) | |
|     Defendants. | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This cause is before the Court on plaintiff's, the United States of America, and plaintiff-intervenors', the State of New York, the State of New Jersey, the State of Connecticut, the Hoosier Environmental Council, and the Ohio Environmental Council (all plaintiffs, collectively, "Plaintiffs"), Motion for Partial Summary Judgment that Cinergy must Comply with New Source Review ("NSR") Requirements, Including the Requirement to Install Current State-of-the-Art Pollution Controls, if it Wishes to Continue Operating its Illegally Modified Units (Docket No. 1432). In essence, Plaintiffs seek clarification of the remedies available to it under the NSR provisions of the Clean Air Act ("CAA"). Defendants, Cinergy Corp., PSI Energy, Inc., and The Cincinnati Gas & Electric Company (collectively, "Cinergy"), oppose the motion arguing that the remedies available are left to the discretion of the Court after presentation of the evidence.

For the reasons stated herein, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

## I. BACKGROUND

The facts relevant to the current issue are:

The front wall radiant superheater replacement project at Wabash River Unit 2 from June 1989 to July 1989, known as Project #11 in this case, was a "major modification" under the NSR program for sulfur dioxide ("$SO_2$"). Pls.' Stmt. of Facts, ¶ 1. Similarly, the high temperature finishing superheater tubes and upper reheater tubing assemblies replacement project at Wabash River Unit 2 from May 1992 to September 1992, known as Project #12 in this case, was a "major modification" under the NSR program for $SO_2$. *Id.* ¶ 2. Again, similarly, the finishing, intermediate, and radiant superheater tubes and upper reheat tube bundles replacement project at Wabash River Unit 5 from June 1989 to October 1989, known as Project #13 in this case, was a "major modification" under the NSR program for both $SO_2$ and nitrogen oxides ("$NO_x$"). *Id.* ¶ 3. Likewise, the boiler pass and heat recovery actions replacement project at Wabash River Unit 5 from February 1990 to May 1990, known as Project #15 in this case, was a "major modification" under the NSR program for both $SO_2$ and $NO_x$.[1] *Id.* ¶ 4.

Cinergy did not obtain NSR permits or undergo NSR review for any of the major modifications at Wabash River Units 2, 3, and 5. *Id.* ¶ 5. However, the Wabash River

---

[1]The Court notes that remedy issues remain with respect to Cinergy's violations at the W.C. Beckjord Plant of both a 1998 Ohio State Implementation Plan and a 1998 Administrative Order Consent, pursuant to this Court's grant of summary judgment in favor of Plaintiffs on those violations. *See* Docket No. 984, Sept. 28, 2007.

2

Plant is currently located in an area designated as "attainment" for $SO_2$ under the NSR Prevention of Significant Deterioration ("PSD") program. *Id.* ¶ 6.

Cinergy contends that current best available control technology ("BACT") for emissions of $SO_2$ at Wabash River Units 2, 3, and 5, is a wet flue gas desulfurization ("WFGD") device that operates at a 95% $SO_2$ removal efficiency. *Id.* ¶ 7; Defs.' Stmt. of Facts, ¶ 3. Installation of BACT at the subject Wabash River Units would require approximately four years to complete and would cost at least $400 million. Defs.' Stmt. of Facts, ¶ 2.

The annual NSR baseline $SO_2$ emissions prior to the 1989 Project #11 at Wabash River Unit 2, were 5,641 tons per year. Pls.' Stmt. of Facts, ¶ 8. The annual NSR baseline $SO_2$ emissions prior to the 1989 Project #13 at Wabash River Unit 3, were 4,484 tons per year. *Id.* ¶ 9. The annual NSR baseline $SO_2$ emissions prior to the 1990 Project #15 at Wabash River Unit 5, were 4,245 tons per year. *Id.* ¶ 10. Had Cinergy sought pre-project synthetic minor permits to stay below the 40 ton-per-year NSR significance thresholds, it would have been subject to an emissions cap of no more than an amount equal to baseline emissions plus 39 tons-per-year. *Id.* ¶ 11.

However, Cinergy contends that it could have secured a synthetic minor permit at the time of the projects at Wabash River Units 2, 3, and 5, and could thereafter have used coal with a slightly smaller sulfur content in order to operate the Units within the constraints established by that lesser permit. Defs.' Stmt. of Facts, ¶ 5. But, Cinergy does not seek an after-the-fact synthetic minor source permit as a component of any Court-ordered remedy. *Id.* ¶ 4.

3

Cinergy's actual post-modification $SO_2$ and $NO_x$ emissions have been stipulated to by Cinergy through 2007. Pls.' Stmt. of Facts, ¶ 12. Cinergy calculates that through the end of 2007, actual post-modification $SO_2$ emissions from Wabash River Units 2, 3, and 5, have exceeded the hypothetical synthetic minor limit it might have obtained prior to the projects, by a total of 113,834 tons. *Id.* ¶ 13.

Cinergy states that an immediate shut down of Wabash River Units 2, 3, and 5, could jeopardize the integrity and reliability of the Midwest ISO grid and Cinergy's ability to serve load in the Terre Haute, Indiana, area during peak seasons. Defs.' Stmt. of Facts, ¶ 1. These Units occupy a "key location on the grid . . . [and] are needed in order to ensure the integrity and reliability of the grid." *Id.* (quoting Harszy Dep. at 22). Alternative solutions to address the peak power deficit in the Terre Haute area are possible, but are not presently available. *Id.*

Cinergy proposes to retire Wabash River Units 2, 3, and 5, during 2012, at which time, there would be a new, state-of-the-art, 600 MW Integrated Gas Combined Cycle plant come on line in Edwardsport, Indiana, to supply added generation and needed capacity. *Id.* ¶¶ 6-7. Until 2012, Cinergy proposes to reduce the output from Wabash River Units 2, 3, and 5, targeting the pre-project emission levels at those Units. *Id.* ¶ 8.

## II. SUMMARY JUDGMENT STANDARD

To paraphrase the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  *See also Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).  The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Athletic Sportswear*, 528 F.3d at 512.  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which it relies.  *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (stating that the non-movant must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996))); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005).

In evaluating a motion for summary judgment, the Court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party. *See Springer*, 518 F.3d at 483-84; *Nat'l Athletic Sportswear*, 528 F.3d at 512. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 675 (7th Cir. 2006).

### III. **DISCUSSION**

Plaintiffs contend that the NSR statutes and the regulations implementing the statutes require one of two remedies: that Cinergy obtain the necessary permits to run Wabash River Units 2, 3, and 5, using BACT; or that Cinergy immediately shut down Wabash River Units 2, 3, and 5. Plaintiffs argue that the NSR statutes specifically required Cinergy to obtain pre-construction permits and, because it did not do so, there are no other remedies. Plaintiffs are particularly concerned that Cinergy seeks to avoid installation of pollution controls by obtaining a synthetic minor permit now that caps emissions from Wabash River Units 2, 3, and 5, to pre-modification levels. Plaintiffs assert that allowing Cinergy to run the Units without applying for the requisite permit is against the intent of Congress and against public policy.

Cinergy contends that Plaintiffs' argument is better left for trial because the Court has discretion to fashion an appropriate remedy. Cinergy asserts that Plaintiffs want the

Court to balance the equities prior to hearing all the evidence it needs to properly do such an analysis.

It appears to the Court that Plaintiffs' request for a ruling that one of two outcomes is available decides the entirety of the issues of Plaintiffs' request for injunctive relief.[2] In other words Plaintiffs ask too much of the Court at this stage of the litigation where all of the factors that the Court must weigh in balancing the equities have not been fleshed out.

Both parties rely heavily upon the Supreme Court case *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982), to substantiate their positions. In *Weinberger*, the Governor of Puerto Rico, and others, sought to enjoin the U.S. Navy from using the area near Vieques Island for air-to-ground training. *Id.* at 307. The Governor took issue with the fact that during training exercises, accidental and intentional bombings of the navigable waters occurred. *Id.* This practice, the Governor argued, violated the Federal Water Pollution Control Act ("FWPCA") because the Navy had never applied for the appropriate permit. *Id.* at 306-08.

The district court in *Weinberger* had determined that the Navy's release of ordnance from aircraft or ships into navigable waters without a permit violated the FWPCA. *Id.* at 308-09. But, the district court concluded that an injunction was not necessary to ensure suitable prompt compliance by the Navy with the FWPCA's permitting requirement. *Id.* at 309-10.

---

[2]The Court notes that in prior orders this Court has addressed the availability of civil penalties, Docket No. 647, Nov. 1, 2005, and the Court's authority to order Cinergy "to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by [its] violations" of the CAA. Docket No. 1440, Oct. 14, 2008.

The appellate court in *Weinberger* reversed the district court, holding that the district court had erred by using the traditional balancing of the parties' interests. *Id.* at 310-11. The appellate court reasoned that the district court had "an absolute statutory obligation to stop any discharges of pollutants until the permit procedure ha[d] been followed . . . ." *Id.* at 311.

The Supreme Court held that the appellate court erred when it held that the FWPCA restricted the district court's discretion to use the traditional balancing approach to decide whether injunctive relief was appropriate. *Id.* at 1807. The *Weinberger* Court acknowledged that "Congress may intervene and guide or control the exercise of the courts' discretion, but [it would] not lightly assume that Congress has intended to depart from established principles" of equity. *Id.* at 1803. The Supreme Court reasoned that, unlike the language of the Endangered Species Act in *TVA v. Hill*, 437 U.S. 153 (1978), which compelled an injunction prohibiting construction of a dam to preserve the snail darter, a species of perch, the FWPCA had no language that required an injunction over other remedies. *Id.* at 313-14. Specifically, the Supreme Court noted that the FWPCA provided for fines and criminal penalties in addition to injunctive relief. *Id.* at 314. In other words, the language of the remedial provisions of the FWPCA did not intend "to deny courts the discretion to rely on remedies other than an immediate prohibitory injunction." *Id.* at 316. *See also Miller v. French*, 530 U.S. 327, 340-41 (2000) (stating that courts "should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,' or an 'inescapable inference' to the contrary" (citations omitted)); *Bedrossian v. Nw. Mem. Hosp.*, 409 F.3d 840, 842-43 (7th Cir. 2005) (stating that "[u]nless

a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.").

In the case at bar, the Court concludes that, like the remedial provisions at issue in *Weinberger*, the relevant remedial provisions of the CAA do not evidence Congress' intent to deny this Court's discretion to fashion an appropriate remedy after careful consideration of all the relevant factors. Pursuant to 42 U.S.C. § 7413(a)(3)(C), whenever the Environmental Protection Agency ("EPA") becomes aware of a violation of the NSR provisions, it may "bring a civil action in accordance with subsection (b) of this section . . . ." Subsection (b) provides that the EPA may

> commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each violation, or both . . .
>
> Any action under this subsection may be brought in [a proper] district court of the United States . . . and such court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty, to collect any fees owed the United States under this chapter . . . and to award any other appropriate relief.

42 U.S.C. § 7413(b). Congress' intent is clear: the Court has jurisdiction to award any appropriate relief. In such a case, the Court will not pre-weigh the equities.

The Court notes that its decision to deny the instant motion is not intended to imply that the Court will not weigh the equities in favor of Plaintiffs after a trial on the merits. In addition, the Court notes that this decision is not intended to imply that the Court will weigh the equities in favor of Cinergy after a trial on the merits.

## IV. CONCLUSION

For the reasons stated herein, plaintiff's, the United States of America, and plaintiff-intervenors', the State of New York, the State of New Jersey, the State of Connecticut, the Hoosier Environmental Council, and the Ohio Environmental Council, Motion for Partial Summary Judgment that Cinergy must Comply with New Source Review Requirements, Including the Requirement to Install Current State-of-the-Art Pollution Controls, if it Wishes to Continue Operating its Illegally Modified Units (Docket No. 1432), is **DENIED**.

IT IS SO ORDERED this 7th day of January, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distributed electronically to:

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

Kevin P. Auerbacher
STATE OF NEW JERSEY,
DEPT. OF LAW & PUBLIC SAFETY
auerbkev@law.dol.lps.state.nj.us

Christopher D. Ball
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Deborah Nicole Behles
U. S. DEPARTMENT OF JUSTICE
deborah.behles@usdoj.gov

Thomas Andrew Benson
U. S. DEPARTMENT OF JUSTICE,
ENVIRONMENTAL ENFORCEMENT
thomas.benson@usdoj.gov

Samuel B. Boxerman
SIDLEY AUSTIN LLP
sboxerman@sidley.com

Phillip Brooks
U. S. DEPARTMENT OF JUSTICE
phillip.brooks@usdoj.gov

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Larry Martin Corcoran
ENVIRONMENTAL AND NATURAL RESOURCES DIVISION
larry.corcoran@usdoj.gov

Carol Lynn DeMarco
NEW JERSEY ATTORNEY GENERAL'S OFFICE
carol.demarco@dol.lps.state.nj.us

Meghan Colleen Delaney
SIDLEY AUSTIN LLP
mberroya@sidley.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
miked@k2d2.com

Jason A. Dunn
UNITED STATES DEPARTMENT OF JUSTICE
jason.dunn@usdoj.gov

Steven David Ellis
ENVIRONMENTAL & NATURAL RESOURCES
steven.ellis@usdoj.gov

Julie L. Ezell
DUKE ENERGY LEGAL DEPARTMENT
julie.ezell@duke-energy.com

Cynthia Marie Ferguson
U. S. DEPARTMENT OF JUSTICE,
ENVIRONMENT & NATURAL RESOURCES
cynthia.ferguson@usdoj.gov

Myles E. Flint II
U. S. DEPT OF JUSTICE
myles.flint@usdoj.gov

Richard Mark Gladstein
U. S. DEPARTMENT OF JUSTICE
richard.gladstein@usdoj.gov

Thomas Charles Green
SIDLEY AUSTIN LLP
tcgreen@sidley.com

Maurice A. Griffin
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
maurice.griffin@dol.lps.state.nj.us

R. Keith Guthrie
ATTORNEY AT LAW
kgmail@comcast.net

Eugene J. Kelly Jr.
NEW YORK STATE ATTORNEY GENERAL
eugene.kelly@oag.state.ny.us

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

James A. King
PORTER WRIGHT MORRIS & ARTHUR LLP
jking@porterwright.com

Joseph M. Kowalczyk
NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
joseph.kowalczyk@oag.state.ny.us

Christine F. Lewis
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
christopher.ball@dol.lps.state.nj.us

Jonathan F. Lewis
CLEAN AIR TASK FORCE
jlewis@catf.us

Jennifer Anne Lukas-Jackson
UNITED STATES DEPARTMENT OF JUSTICE
jennifer.lukas-jackson@usdoj.gov

Larry A. Mackey
BARNES & THORNBURG LLP
larry.mackey@btlaw.com

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com

Jon C. Martin
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Kimberly P. Massicotte
OFFICE OF THE ATTORNEY GENERAL
kimberly.massicotte@po.state.ct.us

Dean M. Moesser
DUKE ENERGY CORPORATION
dmmoesser@duke-energy.com

Carmel Alicia Motherway
CONNECTICUT ATTORNEY GENERAL
carmel.motherway@po.state.ct.us

Michael Joseph Myers
NEW YORK STATE DEPARTMENT OF LAW
michael.myers@oag.state.ny.us

John D. Papageorge
TAFT STETTINIUS & HOLLISTER LLP
jpapageorge@taftlaw.com

Crissy Lyn Pellegrin
ENVIRONMENTAL PROTECTION AGENCY
pellegrin.crissy@epa.gov

Jean Patrice Reilly
STATE OF NEW JERSEY
martijon@law.dol.lps.state.nj.us

Danielle Brody Rosengarten
U. S. DEPT OF JUSTICE
danielle.rosengarten@usdoj.gov

Robert T. Rosenthal
NEW YORK ATTORNEY GENERAL'S OFFICE
robert.rosenthal@oag.state.ny.us

Jeffrey K. Sands
UNITED STATES DEPT. OF JUSTICE
jeffrey.sands@usdoj.gov

Justin Aaron Savage
UNITED STATES DEPARTMENT OF JUSTICE
justin.savage@usdoj.gov

J. Jared Snyder
OFFICE OF THE ATTORNEY GENERAL
jared.snyder@oag.state.ny.us

Kosta S. Stojilkovic
SIDLEY AUSTIN LLP
kstojilkovic@sidley.com

Kathryn B. Thomson
SIDLEY AUSTIN LLP
kthomson@sidley.com

Katherine Lynn Vanderhook
UNITED STATES DEPARTMENT OF JUSTICE
katherine.vanderhook@usdoj.gov

Gaylene Vasaturo
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
vasaturo.gaylene@epa.gov

Frank R. Volpe
SIDLEY AUSTIN LLP
fvolpe@sidley.com

Distributed via U.S. Postal Service to:

Stefanie A. Brand
R J HUGHES JUSTICE COMPLEX
25 Market Street
P O Box 093
Trenton, NJ 08625

Mary E. Costigan
R J HUGHES JUSTICE COMPLEX
25 Market Street
P O Box 093
Trenton, NJ 08625

James A. Murphy
R J HUGHES JUSTICE COMPLEX
25 Market Street
P O Box 093
Trenton, NJ 08625