UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) |
|     *Plaintiffs*, | ) |
| | ) |
|     *vs.* | )   1:99-cv-01693-LJM-JMS |
| | ) |
| CINERGY CORPORATION, *et al.*, | ) |
|     *Defendants.* | ) |
| | ) |

## ORDER

The Court previously took under advisement a discovery dispute between the parties concerning whether the document bearing the bates number CINREM2_EMS000012-16 was inadvertently produced work product and must be returned. [*See* Dkt. 1832.] Being duly advised, the Court now rules as follows.

### BACKGROUND[1]

Energy Management & Services Co. ("EMS") produced the document in question to Plaintiffs pursuant to a non-party subpoena. Defendants previously engaged EMS to help determine the feasibility of building a gas pipeline to the Gallagher plant and executed a confidentiality agreement with EMS that, among other things, required EMS to cooperate with Defendants if Defendants chose to seek a protective order in response to any subpoena served upon EMS. Mr. Hebbeler, the head of Defendants' natural gas department, intentionally forwarded the email in question to the EMS project manager, Mr. Cutlip, several months before

---

[1] These background facts are generally the same as those presented in the minute entry from November 6, 2009 [dkt. 1832]. They have, however, been modified to reflect the information that Plaintiffs provided via email (copied to Defendants) on Monday, November 9. Defendants did not object to Plaintiffs' additional information, or to the background facts set forth in the November 6 minute entry.

1

the subpoena was served.² Although Mr. Cutlip has not been designated as a testifying expert, he was deposed on October 30, 2009, as the Rule 30(b)(6) representative of EMS.

Before the non-party subpoena was served on EMS, Plaintiffs asked Defendants whether the subpoena would implicate any privileges. Defense counsel said no, but without having reviewed any of the responsive documents. Defendants' counsel, internal and external, were unaware that Mr. Hebbeler had previously forwarded the email. Defendants did not review EMS' documents before EMS produced them and did not discover the document in question (the seventh document in a set of 420, which represented a total of 2,226 pages of production) when Defendants received a copy of EMS' production on October 20, 2009—despite its preparations for Mr. Cutlip's October 30, 2009 deposition. Defense counsel first learned about the existence of the document when Plaintiffs used it during that deposition, at which point the Defendants objected and requested the document's return under the inadvertent-disclosure provisions of protective order that the Court has previously entered [dkt. 25].³

## DISCUSSION

Although the parties have not cited it, the Court finds that Federal Rule of Evidence 502 governs the issue of waiver of work-product immunity over the email.⁴ That Rule of Evidence controls because the email in question was actually "disclos[ed] in a Federal proceeding." Fed. R. Evid. 502(a), (b). Thus the Court finds inapposite the cases that the parties have cited, which generally concern when party X can be compelled to disclose work-product previously shared

---

² Defendants do not assert any privilege over Mr. Hebbeler's transmittal email.

³ The parties have requested that the Court provide an expedited ruling on this discovery dispute (and without the necessity of formal briefs) because Mr. Hebbeler is scheduled to be deposed on November 11, 2009, and the resolution of this dispute will potentially impact that deposition.

⁴ Plaintiffs have argued that the email does not qualify as work product at all. The Court does not address that issue because, even if work-product applied in the first instance, Defendants waived it.

with non-party Y. *See, e.g.*, *BASF Aktiengesellschaft v. Reilly Indus.*, 224 F.R.D. 438, 440 (S.D. Ind. 2004) (explaining that waiver turns on whether the disclosure substantially increased the opportunity for disclosure to the adversary in the current proceeding). Those cases are all the more inapposite given that the party who produced the email, EMS, has been engaged by Defendants to help perform remedy-phase defense work; EMS' disclosure is, for all practical purposes, Defendants' disclosure.[5]

Under Federal Rule of Evidence 502, the Court must first ask whether the parties have previously agreed about the circumstances that will, or will not give rise to waiver. If they have, the Court must give effect to that agreement. Fed. R. Evid. 502(d) (addressing agreements incorporated into court orders), (e) (addressing agreements not incorporated into court orders).

Here, the only possible such agreement that Defendants have tried to cite is the stipulated protective order [dkt. 25] that the Court entered several years before Rule of Evidence 502 was enacted. Under that agreement, which does not ever mention attorney-client privilege or work-product, the parties could exchange "confidential information" without fear that those documents would be shared with the public or used for purposes not connected to this litigation. [*See id.* ¶¶ 1, 7.] While the protective order contains a sort of claw-back provision, that provision only applies when a party inadvertently produces "confidential information" during discovery ostensibly without having labeled it as such, permitting the producing party to retrieve the unlabeled versions back. [*See id.* ¶17.] But no provision exempts even inadvertently disclosed confidential information from discovery—what Defendants seek to do here. [*See, e.g.*, *id.* ¶20 ("This Protective Order is designed to facilitate the disclosure of documents in this Litigation

---

[5] Perhaps because EMS' feasibility study now supports the remedy Defendants intend to advocate, Defendants have not claimed that EMS is a consulting expert for Defendants and thus exempt from discovery absent "exceptional circumstances." Fed. R. Civ. Pro. 26(b)(4)(B).

3

that a Party or non-Party considers to be 'Confidential Information.'").] Accordingly, the protective order does not qualify as an agreement under Federal Rule of Evidence 502 and is thus irrelevant to the Court's analysis.

Absent an agreement between the parties, the waiver analysis under Federal Rule of Evidence 502 depends on the type of waiver at issue: intentional or inadvertent. As Plaintiffs do not sufficiently develop a claim of intentional waiver of work-product immunity over the email (a claim that in any event sharply conflicts with Defendants' attempt to put the proverbial cat back in the bag once defense counsel actually learned of the disclosure), the Court will only address inadvertence.[6] In that circumstance, the disclosure of work product will result waiver unless, among other things, "the holder of the [work product protection] took reasonable steps to prevent disclosure" of protected information. Fed. R. Evid. 502(b)(2).

Defendants appear to have taken no such steps. First, despite executing a confidentiality agreement that they claim allows them to share work-product information with EMS in the midst of high-stakes litigation with the government and despite the government's explicit inquiry to Defendants about potential privilege issues, Defendants have not explained what—if any—steps that they took before declaring that there would be no privilege. Did Defendants ask Mr. Hebbeler—the high-ranking employee who executed the confidentiality agreement for Defendants on the very same day that he forwarded the email in question—what type of information he had provided to EMS? Did Defendants ask EMS what type of information that it

---

[6] Plaintiffs do stress, and Defendants do not dispute, that that Mr. Hebbeler intentionally provided the email to EMS. Because Federal Rule of Evidence 502(b) does not permit Defendants to maintain work-product immunity, the Court need not consider whether a common-law waiver occurred when Defendants shared it with EMS in the first instance. *See* Fed. R. Evid. Advisory Committee Note (explaining that the rule only addresses waiver in the context of disclosure during the exchange of discovery and "does not purport to supplant applicable waiver doctrine generally.").

had received?  What screening procedures, if any, did EMS use when responding to the subpoena?[7]  Defendants do not say, despite having the burden to come forth with such information. *Heriot v. Byrne*, 257 F.R.D. 645, 658 (N.D. Ill. 2009).

Second, Defendants failed to review EMS' production at all before EMS provided the information to the government, so that Defendants could decide what privileges, if any, they wished to assert.  After all, EMS does not own the privileges over the documents, Defendants do—privileges that Defendants had standing to assert in response to the subpoena.  *Atl. Inv. Mgmt., LLC v. Millennium Fund I*, Ltd., 212 F.R.D. 395, 398 (N.D. Ill. 2002) ("While a party ordinarily has no standing to object to a subpoena issued to a non-party, that general rule does not apply where, as here, the party claims some personal right or privilege with regard to the documents sought." (quotation omitted)).  Indeed the confidentiality agreement itself provides that once Defendants were notified of a subpoena, Defendants would decide whether "to seek a protective order or other appropriate remedy and/or waive" confidentiality over the information provided to EMS.  [Confidentiality Agreement ¶4.]  Given the relatively small universe of responsive documents that EMS had to produce—under 500—the Court finds Defendants' failure to conduct a pre-production privilege review unreasonable.  *See* Fed. R. Evid. 502 Advisory Committee Note Subdivision (b) (indicating that the number of documents to be produced is a factor when considering the reasonableness of pre-production steps to prevent inadvertent disclosure).

Finally, the Court acknowledges that Federal Rule of Evidence 502 imposes no obligation to conduct a post-production document review to guard against inadvertently produced items.  *See* Fed. R. Evid. 502 Advisory Committee Note Subdivision (b).  And

---

[7] Plaintiffs have advised that during Mr. Cutlip's deposition, defense counsel stated on the record that EMS did not breach the confidentiality agreement by producing the email.

Defendants apparently undertook no such review of EMS' small production in the ten days before Mr. Cutlip's deposition. Yet, had Defendants done so, they might well have noticed the email at issue before Plaintiffs did, and the result in this case might have been different.

### CONCLUSION

The nature of EMS' work for Defendants in connection with the remedy phase of this litigation, Plaintiffs' explicit inquiry about potential privilege issues, and Defendants' decision to execute a confidentiality agreement that could apply to work-product documents all put Defendants on notice that EMS might have privileged documents responsive to Plaintiffs' subpoena. Defendants, however, took no steps to ensure that EMS did not produce any potentially privileged documents. That failure was an unreasonable one; therefore, Defendants cannot be heard to complain about the production of CINREM2_EMS000012-16. Any privileges that might have otherwise attached to it have been waived by Defendants' inattention and inadvertent production.

11/10/2009

                              Jane Magnus-Stinson
                              United States Magistrate Judge
                              Southern District of Indiana

**Distribution via ECF only:**

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

Kevin P. Auerbacher

STATE OF NEW JERSEY, DEPT. OF LAW & PUBLIC SAFETY
auerbkev@law.dol.lps.state.nj.us

Thomas Andrew Benson
U.S. DEPARTMENT OF JUSTICE - ENVIRONMENTAL ENFORCEMENT
thomas.benson@usdoj.gov

Meghan Delaney Berroya
SIDLEY AUSTIN LLP
mberroya@sidley.com

Samuel B. Boxerman
SIDLEY AUSTIN LLP
sboxerman@sidley.com

Phillip Brooks
US DEPARTMENT OF JUSTICE
phillip.brooks@usdoj.gov

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Larry Martin Corcoran
ENVIRONMENTAL AND NATURAL RESOURCES DIVISION
larry.corcoran@usdoj.gov

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
mdirienzo@kddk.com

Jason A. Dunn
UNITED STATES DEPARTMENT OF JUSTICE
jason.dunn@usdoj.gov

Thomas Echikson
SIDLEY AUSTIN LLP
techikson@sidley.com

Steven David Ellis
ENVIRONMENTAL & NATURAL RESOURCES
steven.ellis@usdoj.gov

Julie L. Ezell
DUKE ENERGY LEGAL DEPARTMENT
julie.ezell@duke-energy.com

Cynthia Marie Ferguson
US DEPARTMENT OF JUSTICE - ENVIRONMENT & NATURAL RESOURCES
cynthia.ferguson@usdoj.gov

Myles E. Flint II
US DEPT OF JUSTICE
myles.flint@usdoj.gov

Richard Mark Gladstein
U.S. DEPARTMENT OF JUSTICE
richard.gladstein@usdoj.gov

Thomas Charles Green
SIDLEY AUSTIN LLP
tcgreen@sidley.com

R. Keith Guthrie
ATTORNEY AT LAW
kgmail@comcast.net

Mark D. Hopson
SIDLEY AUSTIN, LLP
mhopson@sidley.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Eugene J. Kelly Jr.
NEW YORK STATE ATTORNEY GENERAL
eugene.kelly@oag.state.ny.us

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Jung W. Kim
NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
jung.kim@dol.lps.state.nj.us

James A. King
PORTER WRIGHT MORRIS & ARTHUR LLP

jking@porterwright.com

Scott N. Koschwitz
OFFICE OF THE ATTORNEY GENERAL
scott.koschwitz@po.state.ct.us

Joseph M. Kowalczyk
NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
joseph.kowalczyk@oag.state.ny.us

Jonathan F. Lewis
CLEAN AIR TASK FORCE
jlewis@catf.us

James A. Lofton
U.S. DEPARTMENT OF JUSTICE
jim.lofton@usdoj.gov

Jennifer Anne Lukas-Jackson
UNITED STATES DEPARTMENT OF JUSTICE
jennifer.lukas-jackson@usdoj.gov

Roger  Martella
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

Jon C. Martin
STATE OF NEW JERSEY
jon.martin@dol.lps.state.nj.us

Kimberly P. Massicotte
OFFICE OF THE ATTORNEY GENERAL
kimberly.massicotte@po.state.ct.us

Dean M. Moesser
DUKE ENERGY CORPORATION
dmmoesser@duke-energy.com

Ryan C. Morris
SIDLEY AUSTIN LLP
rmorris@sidley.com

Michael Joseph Myers
NEW YORK STATE DEPARTMENT OF LAW
michael.myers@oag.state.ny.us

John D. Papageorge
TAFT STETTINIUS & HOLLISTER LLP
jpapageorge@taftlaw.com

Crissy Lyn Pellegrin
ENVIRONMENTAL PROTECTION AGENCY
pellegrin.crissy@epa.gov

Loren A. Remsberg
U.S. DEPARTMENT OF JUSTICE/ ENRD/EES
loren.remsberg@usdoj.gov

Robert T. Rosenthal
NEW YORK ATTORNEY GENERAL'S OFFICE
robert.rosenthal@oag.state.ny.us

Jeffrey K. Sands
UNITED STATES DEPT. OF JUSTICE
jeffrey.sands@usdoj.gov

Justin Aaron Savage
UNITED STATES DEPARTMENT OF JUSTICE
justin.savage@usdoj.gov

J. Jared Snyder
OFFICE OF THE ATTORNEY GENERAL
jared.snyder@oag.state.ny.us

Kosta S. Stojilkovic
SIDLEY AUSTIN LLP
kstojilkovic@sidley.com

Katherine Lynn Vanderhook
UNITED STATES DEPARTMENT OF JUSTICE
katherine.vanderhook@usdoj.gov

Gaylene  Vasaturo
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
vasaturo.gaylene@epa.gov

Frank R. Volpe
SIDLEY AUSTIN LLP
fvolpe@sidley.com